IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

DAVID SUTTON, individually and on
behalf of all others similarly situated,

     Plaintiff,

                                  Case No. _____

v.

                                    <u>CLASS REPRESENTATION</u>

USAA CASUALTY INSURANCE
COMPANY, a Texas corporation,

     Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff David Sutton ("Plaintiff"), individually and on behalf of all others similarly situated, hereby files this Class Action Complaint against Defendant USAA Casualty Insurance Company ("USAA" or "Defendant"), and alleges:

## NATURE OF THE ACTION

1.     This is a class action lawsuit brought by Plaintiff, the named insured under an automobile policy issued by USAA for private passenger auto physical damage, including comprehensive and collision coverage (the "Insurance Policy").[1] Under the Insurance Policy, Defendant is required to pay "Actual Cash Value" or "ACV" in the event Plaintiff's insured vehicle is declared a total loss.

2.     USAA is a private insurance company that, based upon Plaintiff's information and belief, collects tens of millions of dollars in private-passenger physical damage coverage premiums every year from its insureds. Among other coverages, Defendant offers comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid amounts that

---

[1] A true and correct copy of Plaintiff's Insurance Policy is attached hereto as Exhibit A.

Defendant owed not just to Plaintiff, but to thousands of other members of the putative Class (as fully defined below) for ACV losses for total loss vehicles insured with comprehensive and collision coverage by USAA.

3.      This lawsuit is brought by Plaintiff, on behalf of himself and all other similarly situated insureds, against USAA for damages suffered as a result of Defendant's failures to pay full ACV payments or full total loss payments ("FTLP") to first-party total loss insureds with physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include state and local title transfer and vehicle registration fees ("Vehicle Title and Registration Fees") in its calculation of ACV when paying FTLP to Plaintiff and its insureds.

4.      The failure to pay FTLP for first-party total losses owed to its insureds is a breach of its policy agreement and a clear breach of contract under Florida law.

## PARTIES, JURISDICTION, AND VENUE

5.      At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Miami-Dade County, Florida.

6.      At all times material hereto, Defendant is and was a corporation authorized to transact insurance in the State of Florida, with a substantial portion of its business being conducted in Miami-Dade County. Defendant is incorporated in the State of Texas, with its principal place of business in San Antonio, Texas.

7.      This is an action for, among other things, breach of contract for damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees.

8.      This Court has personal jurisdiction over Defendant because Defendant, at all times material hereto, was authorized to conduct business in the State of Florida and engaged in business

in Miami-Dade County, Florida.

9.     This Court has subject matter jurisdiction over this action pursuant to Sections 26.012 and 86.011, Florida Statutes (2019).

10.    Plaintiff and members of the putative class are all insured under Florida policies issued by Defendant.

11.    This action is brought as a class action pursuant to Florida Rules of Civil Procedure 1.220(a), (b)(2), and (b)(3).

12.    Venue is proper in this Court pursuant to Sections 47.011 and 47.051, Florida Statutes (2019) because Defendant transacts business in Volusia County, Florida, where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.

## FACTUAL ALLEGATIONS

13.    Defendant's standardized policy language as to comprehensive and collision coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida.

14.    At all times material hereto, Plaintiff's vehicle, a 2018 Nissan Titan Vin Number 1N6AA1E68JN520002 (the "Insured Vehicle") was insured by Defendant and covered under the Insurance Policy.

15.    Under the Insurance Policy, in the event an insured vehicle is declared a total loss, the payment of ACV includes an obligation to pay Vehicle Title and Registration Fees or FTLP.

16.    On or about February 23, 2019, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim with Defendant for property damage, with Claim Number 014972527-022 (the "Claim").

17.    After the Claim was filed, Defendant declared the Insured Vehicle as a total loss

and determined that the Insured Vehicle had a base market value of $23,809.00. *See* USAA Total Loss Letter, dated May 21, 2019, attached hereto as Exhibit B.

18.     The base value was calculated by a third-party vendor, CCC Information Services, Inc. ("CCC"), which based its valuation on the cost to purchase similar vehicles with similar conditions and mileage. CCC's Market Valuation Report (the "Valuation Report") is attached hereto as Exhibit C.

19.     No amount for the Vehicle Title and Registration Fees was included in the amount listed in the Valuation Report. Ex. C, at 1.

20.     Relying on the Valuation Report, Defendant added a total of $1,478.54 for state and local sales taxes to the Insured Vehicle's base value (after an adjustment for the Insured Vehicle's condition), and then subtracted Plaintiff's $1,000.00 deductible, for a total payment amount of $24,287.54, which did not include Vehicle Title and Registration Fees. Ex. C, at 1.

21.     Defendant's failure to include Vehicle Title and Registration Fees amounts when making the total loss payment to Plaintiff is a breach of the Insurance Policy, which promises to provide the ACV of the total loss vehicle, including Vehicle Title and Registration Fees amounts.

22.     Defendant, pursuant to its standard and uniform business practice, never pays its insureds the respective Vehicle Title and Registration Fees owed after an insured vehicle is deemed a total loss.

23.     Defendant's failure to pay Vehicle Title and Registration Fees constitutes a breach of the Insurance Policy.

24.     Vehicle Title and Registration Fees are mandatory, applicable fees that must be paid to purchase any vehicle in the State of Florida.

25.     Florida law requires that all vehicles be properly titled and registered in order to be

legally driven on Florida roadways. The minimum fee to transfer title to a vehicle in the state of Florida is $75.25.

26.     Florida law also requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida' roadways. The minimum fee to transfer a license plate or tag in the state of Florida is $4.50.

27.     Florida law further requires that all vehicles be registered at a cost of $225.00.

28.     Vehicle registration fees in Florida may also include local fees.

29.     After determining that Plaintiff's Insured Vehicle, as well those of other similarlysituated insureds, was a total loss, Defendant owed Vehicle Title and Registration Fees that were never subsequently paid.

30.     In breach of its contract with Plaintiff, Defendant did not include Vehicle Title and Registration Fees when it made the ACV payment for Plaintiff's FTLP.

31.     In doing so, Defendant underpaid Plaintiff in the amount of the mandatory costs and fees necessary to purchase a replacement vehicle, thereby violating its own policy.

32.     Plaintiff and all members of the putative Class paid all premiums owed under their respective insurance policies with USAA and otherwise satisfied all conditions precedent, or such conditions precedent were waived or excused, prior to bringing this action against Defendant.

## USAA'S INSURANCE POLICY

33.     In Part D of the Insurance Policy, entitled "PHYSICAL DAMAGE COVERAGE" which is representative of the policy language governing the thousands of insureds in the putative Class, Defendant states, in pertinent part, that under its Collision Coverage:

> We will pay for loss caused by collision to your covered auto, including its equipment, and personal property contained in your covered auto, minus any applicable deductible shown in the Declarations.

Ex. A, at 22.

34.     Under the subsection entitled "Limit of Liability" in Part D of the Insurance Policy,

Defendant states, in pertinent part, that:

A.     Total loss to your covered auto. Our limit of liability under Comprehensive
Coverage and Collision Coverage is the actual cash value of the vehicle,
inclusive of any custom equipment.
   1.   The maximum amount we will include for loss to custom equipment
        in or on your covered auto is $5,000.
   2.   We will declare you covered auto to be a total loss if, in our judgment,
        the cost to repair it would be greater than its actual cash value minus
        its salvage value after the loss.

Ex. A, at 23.

35.     Under the Insurance Policy:

"Actual cash value" means the amount that it would cost, at the time of loss, to
buy a comparable vehicle. As applied to your covered auto, a comparable vehicle
is one of the same make, model, year, body type, and options with substantially
similar mileage and physical condition.

Ex. A, at 22..

36.     The subject policy language does not further define ACV to include: (1) any

provision excluding Vehicle Title and Registration Fees from ACV; or (2) any provision deferring

payment of Vehicle Title and Registration Fees for any purpose whatsoever.

37.     The Insurance Policy's language applies to all covered automobiles, irrespective of

ownership interests—whether the insured vehicles are owned, financed, or leased. Ex. A, at 4.

## PAYMENT OF MANDATORY FEES

38.     Controlling case law from the Florida Supreme Court, Florida's appellate courts,

the Eleventh Circuit Court of Appeals, and Florida's federal district courts hold that the term

"actual cash value," when undefined in an Insurance Policy, should be defined as the repair or

replacement cost minus depreciation—a definition that would include the Vehicle Title and

Registration Fees necessarily incurred upon replacement of the insured vehicle. *See e.g.*, *Trinidad*

*v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 438 (Fla. 2013) (holding that "[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (quoting Black's Law Dictionary 506, 1690) (9th Ed. 2009); *Goff v. State Farm Fla. Ins. Co.*, 999 So. 2d 684, 689 (Fla. 2d DCA 2008) (noting that undefined ACV is calculated as full replacement cost minus depreciation); *Mills v Foremost Ins. Co.*, 511 F.3d 1300, 1306 (11th Cir. 2008) (holding that sales tax "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (quoting *Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001)); *Roth v. Geico Gen. Ins. Co.*, 16-cv-62942 (S.D. Fla. June 14, 2018), D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); *Bastian v. United Services Auto. Ass'n*, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the Eleventh Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus should be included in the calculation of the ACV).

39.     In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. *Id.* But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the Insurance Policy is considered ambiguous." *See Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy

ambiguities "liberally in favor of the insured and strictly against the insurer who prepared the policy." *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." *See e.g.*, *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565 (Fla. 2nd DCA 1984) (noting that coverage must be construed broadly and exclusions narrowly).

40.     Sales tax and Vehicle Title and Registration Fees are examples of elements constituting the FTLP owed to insureds in the event of a total loss.

41.     By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle. Otherwise, the Defendant's insureds, including Plaintiff, are not paid the amount sufficient to purchase a replacement vehicle.

42.     Nevertheless, Defendant declined to include all such Vehicle Title and Registration Fees in making ACV payments to total loss insureds, thereby breaching its respective contracts with its insureds.

## CLASS REPRESENTATION ALLEGATIONS

43.     Plaintiff brings this action on behalf of himself and a purported Class of all other similarly situated insureds. This action is brought and is properly maintained as a class action pursuant to Florida Rules of Civil Procedure 1.220(a), (b)(2), and (b)(3).

44.     Plaintiff seeks to represent on a class-wide basis all persons similarly situated, the class (the "Class") defined as follows:

> All insureds under any Florida policy issued by USAA Casualty Insurance Company and its subsidiaries with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-

party claim for total loss, and whose claim was adjusted as a total loss, within the five-year time period prior to the date on which this lawsuit was filed until the date of class certification, who were not paid Vehicle Title and Registration Fees.

45.     Excluded from the Class are Defendant, its subsidiaries and affiliates; its officers, directors, and members of their immediate families; any entity in which Defendant has a controlling interest; the legal representatives, heirs, successors, or assigns of any such excluded party; and any judicial officer to whom this action is assigned and the members of their immediate families.

46.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether certification is appropriate.

**A.    <u>Numerosity</u>**

47.     Although the precise number of putative Class members are unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that, because Defendant is writes tens of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by Defendant's unlawful practices consists of thousands of individuals or the putative Class is otherwise so numerous that joinder of all Class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to the standardized Insurance Policy language. As a direct result of this unlawful practice, Defendant improperly retains insurance benefits rightfully owed to Plaintiff and the putative Class of USAA's insureds The Class definition allows the Court to reasonably ascertain whether any individual or entity that was insured with USAA during the class period and received an ACV that did not include Vehicle Title and Registration Fees should be a member of the Class.

48. Upon information and belief, Defendant uniformly fails to pay Vehicle Title and Registration Fees in total loss cases. Accordingly, the Class consists of many thousands, if not tens of thousands, of Defendant's insureds who were not paid in violation of their insurance policies. Thus, pursuant to Florida Rule of Civil Procedure 1.220(a)(1), the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

**B.** **Commonality**

49. Common questions of law and fact predominate in this matter because Defendant's conduct towards the members of the Class is identical. Defendant uniformly fails to pay its insureds Vehicle Title and Registration Fees in total loss cases.

50. Plaintiff shares a common interest with all members of the putative Class in the subject of this action and the relief sought.

51. Plaintiff satisfies the commonality requirement under Florida Rule of Civil Procedure 1.220(a)(2) because his claims arise from a practice that Defendant applied uniformly to all its similarly situated insureds and are based on the same legal theories as all other members of the putative Class, that failing to pay Vehicle Title and Registration Fees in total loss cases violates the uniform insurance policies. Because Defendant's conduct was uniform as to all Class members, the material elements of Plaintiff's claims and those of absent Class members are subject to common proof, and the outcome of Plaintiff's individual actions will be dispositive for the Class. The common questions include, but are not limited to, the following: (a) whether, under Defendant's standardized policy language, Plaintiff and the Class members are owed Vehicle Title and Registration Fees upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class members by failing to pay Vehicle Title and Registration Fees upon the total loss of an insured vehicle.

### C.     **Typicality**

52.     Pursuant to Florida Rule of Civil Procedure 1.220(a)(3), Plaintiff's claims are typical of the claims of all other members of the Class because all such claims arise from Defendant's failure to pay Vehicle Title and Registration Fees on total loss claims of insured vehicles.

53.     Plaintiff and the Class members' legal claims arise from the same core practices, namely, the failure to pay full ACV, including Vehicle Title and Registration Fees, for first-party total loss claims. The material facts underlying the claims of each putative class member are the same material facts as those supporting the Plaintiff's claims alleged herein and require proof of the same material facts.

### D.     **Adequacy**

54.     Plaintiff can and will adequately represent the putative Class and his interests are common to, and coincident with, those of all absent Class members. By proving his individual claims, Plaintiff will necessarily prove the claims of the putative Class and prove Defendant's liability to the Class. Plaintiff has no known conflicts of interest with any members of the Class; his interests and claims are not antagonistic to those of any other Class members; nor are his claims subject to any unique defenses.

55.     The representative Plaintiff therefore can and will fairly and adequately protect and represent the interests of the Class under the criteria set forth in Florida Rule of Civil Procedure 1.220(a)(4).

56.     Plaintiff's counsel—Edelsberg Law, P.A.; Shamis & Gentile, P.A., and Normand PLLC—have extensive experience in complex commercial litigation and class actions and have adequate financial resources to ensure that the interests of the Class will not be harmed.

57.     If appointed as Class representative, Plaintiff is aware of, and is committed to, faithfully uphold his fiduciary duties to absent Class members. Plaintiff and his counsel are committed to the vigorous prosecution of this action and will allocate the appropriate time and resources to ensure that the putative Class is fairly represented.

58.     Plaintiff and his counsel will therefore fairly and adequately assert and protect the interest of the putative Class.

**E.     Predominance and Superiority**

59.     A class action provides a fair and efficient method for the adjudication of this controversy under the criteria set forth in Florida Rule of Civil Procedure 1.220. Class treatment is a superior form of adjudication than the prosecution of individual claims and provides a substantial benefit to the court and litigants by avoiding a multiplicity of suits and the risk of inconsistent results.

60.     Because Defendant's conduct was uniform with respect to all prospective Class members, common questions of law and fact predominate over any potential individual questions. Because the Class encompasses thousands of claims (if not tens of thousands of claims), a single, state-wide class action is plainly more efficient than many thousands of individual law suits, each requiring the same discovery and proofs. Given the relatively small amount of the claim(s) of each putative class member, it is likely that absent class representation, such claims would not be brought, and the class would never have appropriate redress for Defendant's improper conduct. A class action is superior and more efficient to other available methods for the fair and efficient adjudication of this controversy.

61.     Class treatment ensures uniformity and consistency in results, enables the many small claims of class members to be brought efficiently, and provides optimum relief to class

members for their past and future injuries, while deterring Defendant and other similar businesses from engaging in such wrongful conduct in the future.

62.    In addition, the expense and burden of individual litigation effectively makes it a practical impossibility for individual Class members to seek redress for the wrongs alleged herein.

63.    The advantages of maintaining this action as a class suit far outweigh the expense and waste of judicial effort that would result from thousands of separate adjudications or the unfairness of none at all, which is the likely outcome if the small individual claims at issue are not aggregated as a class.

64.    There are also no unusual difficulties likely to be encountered in the maintenance of this action as a class suit, and this Court can effectively manage the class action.

65.    The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendant keeps records of insurance policies and claims of prospective class members during the class period, including records of total loss vehicles. Therefore, both the membership of the class and the amount of individual damages is readily ascertainable from Defendant's records.

**F.    Declaratory Relief Under Florida Rule of Civil Procedure 1.220(b)(2)**

66.    Under Florida Rule of Civil Procedure 1.220(b)(2), class treatment is warranted here because Defendant acted or refused to act on grounds generally applicable to all the members of the putative Class, thereby making final declaratory relief concerning the Class as a whole appropriate.

67.    Because declaratory relief is sought, class treatment ensures uniformity and consistency in results, enables the many small claims of Class members as well as claims for class-wide declaratory relief are brought efficiently, provides optimum relief to class members for their

past and future injuries, and deters Defendant and other similar businesses from engaging in such wrongful conduct in the future.

68.     Because Defendant acted consistently towards Plaintiff and all members of the putative Class, declaratory relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

69.     Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

70.     Plaintiff retained the undersigned counsel and agreed to pay reasonable attorney's fees and costs in connection with this action. Plaintiff, for himself and the putative Class, is entitled to recover attorney's fees pursuant to Section 627.428, Florida Statutes and taxable costs pursuant to Section 57.041, Florida Statutes.

## <u>COUNT I</u>
## BREACH OF CONTRACT

71.     All allegations in the paragraphs above are hereby incorporated by reference.

72.     This count is brought by Plaintiff on behalf of himself and all members of the putative Class.

73.     Plaintiff was party to an enforceable contract, the Insurance Policy, with Defendant as described herein. *See* Ex. A. At all times material hereto, all members of the putative Class were also parties to similar contracts with Defendant that contained materially identical terms to the Insurance Policy.

74.     Florida law governs the interpretation and construction of the insurance policies of Plaintiff and all members of the Class with Defendant.

75.     Plaintiff and all members of the putative Class made claims that Defendant covered and determined to be first party total losses under their perspective insurance policies.

76.     Defendant, in paying the total loss claim, determined that Plaintiff and each Class member complied with the terms of their respective insurance contract and fulfilled all duties and conditions under the same that were necessary to be paid on their total loss class.

77.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class member were owed the ACV of the vehicle.

78.     Defendant breached that obligation by failing to include Vehicle Title and Registration Fees in the ACV for the FTLP, thereby failing to pay the vehicle's ACV to Plaintiff and all members of the Class.

79.     Defendant's failure to provide the promised coverage constitutes a material breach of contracts with Plaintiff and every member of the Class.

80.     As a result of the foregoing breaches, Plaintiff and the Class members are entitled under Defendant's insurance policies to sums representing the benefits owed for full ACV payment, including Vehicle Title and Registration Fees, as well as pre-judgment and post-judgment interest, and any other relief the Court deems appropriate.

## COUNT II
## DECLARATORY RELIEF

81.     All allegations in the paragraphs above are hereby incorporated by reference.

82.     This count seeks declaratory relief pursuant to Chapter 86, Florida Statutes.

83.     This count is brought by Plaintiff on behalf of himself and all members of the Class.

84.     Plaintiff was party to a contract, the Insurance Policy, with Defendant as described herein. *See* Ex. A. All members of the Class were parties to an insurance contract with Defendant containing materially identical terms to the Insurance Policy.

85.     Florida law governs the interpretation and construction of Plaintiff and all Class members' insurance policies with Defendant.

86.     Plaintiff seeks a declaratory judgment that an insured is entitled to Vehicle Title and Registration Fees in a FTLP to pay a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members' contractual relationships with Defendant.

87.     Plaintiff contends Defendant is required to pay Vehicle Title and Registration Fees through a FTLP to pay a vehicle's ACV under the insurance policies that govern Plaintiff and the Class members relationship with Defendant.

88.     Defendant disagrees with Plaintiff's interpretation of the Insurance Policy.

89.     Because of Defendant's claim to the contrary, Plaintiff is in doubt as to his rights under the Insurance Policy.

90.     The above allegations present ascertained or ascertainable facts of a present controversy between Plaintiff and Defendant as to entitlement to the Vehicle Title and Registration Fees.

91.     The above allegations reflect that Plaintiff has presented a justiciable question as to the existence of his right to the Vehicle Title and Registration Fees.

92.     All antagonistic and adverse interests, namely Plaintiff and Defendant and the Class when certified, are before this Court by the filing of this count.

93.     Pursuant to Section 86.021, Florida Statutes, Plaintiff is entitled to a declaration of his right to the Vehicle Title and Registration Fees to resolve his doubt about his rights under the Insurance Policy considering the Defendant's position otherwise.

94.     Upon the Court granting Plaintiff the declaratory relief requested herein, Plaintiff will move the Court pursuant to Section 86.061, Florida Statutes for supplemental relief in the form of an order directing that the Vehicle Title and Registration Fees be paid to Plaintiff, and the Class, if certified, as well as a judgment for pre-judgment interest and post-judgment interest, as

the Vehicle Title and Registration Fees represents a liquidated amount.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all triable issues and seeks relief and judgment as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class above;

2. For an award of compensatory damages for Plaintiff and the Class in amounts owed under Defendant's insurance policies;

3. For declaratory relief to be entered for Plaintiff and the Class that his interpretation of the Insurance Policy is correct, thereby requiring Defendant to pay Vehicle Title and Registration Fees;

4. For all other damages according to proof;

5. For an award of attorney's fees and expenses as appropriate under applicable law;

6. For costs of suit incurred herein;

7. For pre-judgment and post-judgment interest on any amounts awarded; and

8. For other and further forms of relief as this Court deems just and proper.

Dated: August 1, 2019

Respectfully Submitted By:

*/s/ Andrew J. Shamis*
**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
Garrett O. Berg, Esq.
Florida Bar No. 1000427
14 NE 1st Avenue, Suite 400
Miami, FL 33132
Tel: (305) 479-2299
ashamis@shamisgentile.com
gberg@shamisgentile.com

**NORMAND PLLC**
Edmund A. Normand, Esq.
Florida Bar No. 865590
Jacob Phillips, Esq.
Florida Bar No. 0120130
62 West Colonial Street, Suite 209
Orlando, Florida 32814
Tel: (407) 603-6031
ed@ednormand.com
jacob.phillips@normandpllc.com
service@normandpllc.com

*Counsel for Plaintiff*

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
Jordan D. Utanski, Esq.
Florida Bar No. 119432
20900 NE 30th Ave
Aventura, FL 33180
Tel: (305) 975-3320
scott@edelsberglaw.com
utanski@edelsberglaw.com

*Counsel for Plaintiff*

# **<u>EXHIBIT A</u>**



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

# FLORIDA AUTO POLICY

## READ YOUR POLICY, DECLARATIONS AND ENDORSEMENTS CAREFULLY

The automobile insurance contract between the named insured and the company shown on the Declarations page consists of this policy plus the Declarations page and any applicable endorsements. The Quick Reference section outlines essential information contained on the Declarations and the major parts of the policy.

**The policy provides the coverages and amounts of insurance shown on the Declarations for which a premium is shown.**

This is a participating policy. You are entitled to dividends as may be declared by the company's board of directors.

If this policy is issued by United Services Automobile Association ("USAA"), a reciprocal interinsurance exchange, the following apply:

- By purchasing this policy you are a member of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- The board of directors may annually allocate a portion of USAA's surplus to Subscriber's Accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

## QUICK REFERENCE

| | | |
|---|---|---|
| | | **DECLARATIONS PAGE** |
| | | Named Insured and Address<br>Policy Period<br>Operators<br>Description of Vehicle(s)<br>Coverages, Amounts of<br>  Insurance and Premiums<br>Endorsements |
| Beginning on Page | 3 | **Agreement and Definitions** |
| **Part A** | 4 | **Liability Coverage** |
| | | Definitions<br>Insuring Agreement<br>  Bodily Injury Liability Coverage and<br>  Property Damage Liability Coverage<br>Limit of Liability<br>Supplementary Payments<br>Exclusions<br>Out of State Coverage<br>Financial Responsibility Required<br>Other Insurance |
| **Part B-1** | 8 | **Personal Injury Protection Coverage** |
| | | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Application of Deductible<br>Exclusions<br>Other Insurance |
| **Part B-2** | 14 | **Medical Payments Coverage** |
| | | Definitions<br>Insuring Agreement<br>Limit of Liability<br>Exclusions<br>Other Insurance<br>Special Provisions |

(Quick Reference continued on Page 2)

0901119ca4d9253f

USAA Confidential

| **Part C** | **17** | **Uninsured Motorists Coverage** | **Part E** | **26** | **General Provisions** |
|---|---|---|---|---|---|
| | | Definitions | | | Bankruptcy |
| | | Insuring Agreement | | | Changes |
| | | Limit of Liability (Stacked) | | | Conformity to Law |
| | | Exclusions | | | Duties After an Accident or Loss |
| | | Other Insurance | | | Legal Action Against Us |
| | | Non-Duplication | | | Mediation |
| **Part D** | **21** | **Physical Damage Coverage** | | | Misrepresentation |
| | | | | | Non-Duplication of Payment |
| | | Definitions | | | Our Right to Recover Payment |
| | | Insuring Agreement | | | Ownership |
| | |   Comprehensive Coverage | | | Policy Period and Territory |
| | |   Collision Coverage | | | Reducing the Risk of Loss and |
| | |   Rental Reimbursement Coverage | | |   Other Benefits |
| | |   USAA Roadside Assistance | | | Spouse Access |
| | | Limit of Liability | | | Termination |
| | | Payment of Loss | | | Transfer of Your Interest in this |
| | | Loss Payable Clause | | |   Policy |
| | | Waiver of Collision Deductible | | | Two or More Auto Policies |
| | | Exclusions | | | |
| | | Mandatory Pre-Insurance Inspection | | | |
| | | No Benefit to Bailee | | | |
| | | Other Sources of Recovery | | | |
| | | Appraisal | | | |

0901119ca4d9253f

USAA Confidential

# FLORIDA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We,"** **"us,"** and **"our"** refer to the Company providing this insurance.

C. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing, or storing vehicles.

D. **"Bodily injury"** (referred to as **BI**).

1. **"Bodily injury"** means bodily harm, sickness, disease, or death.

2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. **"Driving contest or challenge"** includes, but is not limited to:

1. A competition against other people, vehicles, or time; or

2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. **"Family member"** means a person related to **you** by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

G. **"Fungi"** means any type or form of **fungi**, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi**.

H. **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. **"Motorcycle"** means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

J. **"Newly acquired vehicle."**

1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

a. A private passenger auto, pickup, **trailer**, or **van**;

b. A **miscellaneous vehicle** that is not used in any business or occupation; or

c. A **motorcycle**, but only if a **motorcycle** is shown on the current Declarations.

0901119ca4d9253f

USAA Confidential

2. **We** will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If **your** policy does not provide Comprehensive Coverage or Collision Coverage, **we** will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under J.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If **you** wish to continue coverage for the **newly acquired vehicle** beyond this 30-day period, **you** must request it during this 30-day period, and **we** must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30-day period, any coverage that **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

K. **"Occupying"** means in, on, getting into or out of.

L. **"Property damage"** (referred to as **PD**).

   1. **"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M. **"Trailer"** means a vehicle designed to be pulled by a private passenger auto, pickup, **van** or **miscellaneous vehicle**. It also means a farm wagon or implement while towed by such vehicles.

N. **"Van"** means a four-wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

O. **"Your covered auto"** means:

   1. Any vehicle shown on the Declarations.

   2. Any **newly acquired vehicle**.

   3. Any **trailer you** own.

# PART A - LIABILITY COVERAGE

**DEFINITIONS**

**"Covered person"** as used in this Part means:

   1. **You** or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

   2. Any person using **your covered auto**.

   3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom

coverage is afforded in 1. or 2. above. With respect to an auto or **trailer** other than **your covered auto**, this provision only applies if the other person or organization does not own or hire the auto or **trailer**.

The following are not **covered persons** under Part A:

   1. The United States of America or any of its agencies.

USAA Confidential

**(PART A Cont'd.)**

2. Any person with respect to **BI** or **PD** resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the **BI** or **PD**.

**INSURING AGREEMENT**

**We** will pay compensatory damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. **Our** duty to settle or defend ends when **our** limit of liability for these coverages has been paid or tendered. **We** have no duty to defend any suit or settle any claim for **BI** or **PD** not covered under this policy.

**LIMIT OF LIABILITY**

For **BI** sustained by any one person in any one auto accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for **BI** Liability.

Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for **BI** Liability is **our** maximum limit of liability for all damages for **BI** resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for **PD** Liability is **our** maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most **we** will pay regardless of the number of:

1. **Covered persons**;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, **our** limit of liability will be the minimum required by the state's financial responsibility law.

**SUPPLEMENTARY PAYMENTS**

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over **our** limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the **covered person** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit **we** defend, on that part of a judgment that does not exceed **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment that does not exceed **our** limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

5. The amount a **covered person** must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or **van** which occurs while the vehicle is in the care, custody, or control of a **covered person**. The most **we** will pay is an amount equal to one month of the basic salary of the **covered person** at the time of a loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at **our** request.

0901119ca4d9253f                          USAA Confidential

**(PART A Cont'd.)**

7. All defense costs **we** incur.

**EXCLUSIONS**

A. **We** do not provide Liability Coverage for any **covered person**:

1. Who intentionally acts or directs to cause **BI** or **PD**, or who acts or directs to cause with reasonable expectation of causing **BI** or **PD**.

2. For **PD** to property owned or being transported by a **covered person**.

3. For **PD** to property rented to, used by, or in the care of any **covered person**. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For **BI** to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the **auto business**. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of **your covered auto** by **you**, any **family member**, or any partner, agent, or employee of **you** or any **family member**.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the **auto business**, farming, or ranching. This exclusion (A.7.) does not apply:

   a. To the maintenance or use of a private passenger auto; a pickup or **van** owned by **you** or any **family member**; or a **trailer** used with these vehicles; or

   b. To the maintenance or use of a pickup or **van** not owned by **you** or any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For **BI** or **PD** for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For **BI** or **PD** occurring while **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For **BI** sustained as a result of exposure to **fungi**, wet or dry rot, or bacteria.

13. For **BI** to a relative who resides primarily in that **covered person's** household.

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

USAA Confidential

0901119ca4d9253f

**(PART A Cont'd.)**

2. Any vehicle, other than **your covered auto**:

   a. That has fewer than four wheels; or

   b. That is designed mainly for use off public roads.

   This exclusion (B.2.) does not apply while the vehicle is being used in a medical emergency.

3. Any vehicle, other than **your covered auto**, that is owned by **you**, or furnished or available for **your** regular use. This exclusion (B.3.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (B.4.) does not apply:

   a. To **your** maintenance or use of such vehicle; or

   b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

5. Any vehicle while being operated in, or in practice for, any **driving contest or challenge**.

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

A. If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. With respect to a vehicle **you** or a **family member** does not own, any insurance **we** provide to a **covered person** shall be excess over:

   1. Any other applicable liability insurance; or

   2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

   However, with respect to a vehicle leased or rented by **you**, if **you** have agreed to provide primary coverage in a written lease or rental agreement, the coverage provided by this policy is primary, but only for the minimum limits required by the Florida Financial Responsibility law and the Florida Motor Vehicle No-Fault Law.

0901119ca4d9253f

USAA Confidential

# PART B-1 – PERSONAL INJURY PROTECTION COVERAGE
### (Referred to as PIP Coverage)

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**:

   a. While **occupying your covered auto** within the United States or Canada;

   b. While **occupying** any **motor vehicle** within the State of Florida; or

   c. As a **pedestrian**, for **BI** caused by physical contact with a **motor vehicle** and resulting from an accident occurring within the State of Florida.

2. Any other person while **occupying** or when struck by **your covered auto** within the State of Florida. However, this (A.2.) does not apply if the person is:

   a. An **owner** of a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law; or

   b. An insured entitled to receive PIP benefits from the **motor vehicle owner's** insurer.

B. **"Emergency medical condition"** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

1. Serious jeopardy to patient health;

2. Serious impairment to bodily functions; or

3. Serious dysfunction of any bodily organ or part.

C. **"Entity wholly owned"** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395.

D. **"Family member"** as used in this Part means a relative of any degree by blood, marriage, or by adoption, who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

E. **"Medically necessary."**

1. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

   a. In accordance with generally accepted standards of medical practice;

   b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

   c. Not primarily for the convenience of the patient, physician, or other health care provider.

USAA Confidential

0901119ca4d9253f

**(PART B-1 Cont'd.)**

2. **"Medically necessary"** does not include the following:

   a. Spinal ultrasound, also known as sonography, ultrasonography, and echography;

   b. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining bodily injury covered by personal injury protection benefits; and

   c. Dermatomal Evoked Potential.

F. **"Medical benefits"** means **reasonable fees** for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to F.1. below within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

1. Initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III or chapter 401 which provides emergency transportation and treatment.

2. Upon referral by a provided described in F.1., follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to F.1. which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician,

osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by any of the following persons or entities:

   a. A hospital or ambulatory surgical center licensed under chapter 395.

   b. An **entity wholly owned** by one or more physicians licensed under chapter 458 or 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

   c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

   d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in F.2.

   e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

   (1) Has a medical director licensed under chapter 485, chapter 459, or chapter 460;

   (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

0901119ca4d9253f

USAA Confidential

**(PART B-1 Cont'd.)**

 (3) Provides at least four of the following medical specialties:

  (a) General medicine;

  (b) Radiography;

  (c) Orthopedic medicine;

  (d) Physical medicine;

  (e) Physical therapy;

  (f) Physical rehabilitation;

  (g) Prescribing or dispensing outpatient prescription medication;

  (h) Laboratory services.

3. Reimbursement for services and care provided in F.1. or F.2. up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person had an **emergency medical condition**.

4. Reimbursement for services and care provided in F.1. or F.2. is limited to $2,500 if any provider listed in F.1. or F.2. determines that the injured person did not have an **emergency medical condition**.

5. **Medical benefits** do not include massage as defined in s. 480.033 or acupuncture as defined in s. 457.102, regardless of the person, entity, or licensee providing massage or acupuncture, and a licensed massage therapist or licensed acupuncturist may not be reimbursed for **medical benefits** under this section.

G. **"Motor vehicle."**

1. **"Motor vehicle"** means any self-propelled vehicle with four or more wheels which is of a type both designed and required to be licensed for use on the highways of the State of Florida and any **trailer** or semi-trailer designed for use with such vehicle.

2. **"Motor vehicle"** does not include a mobile home or any vehicle, other than a **motor vehicle** used in public school transportation:

 a. Which is used as mass transit and designed to transport more than five passengers exclusive of the operator of the vehicle; and

 b. Owned by a municipality, a transit authority, or a political subdivision of the state.

H. **"Owner"** means a person or organization who holds the legal title to a **motor vehicle**, and also includes:

1. A debtor having the right to possession, in the event a **motor vehicle** is the subject of a security agreement; and

2. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease with option to purchase and such lease agreement is for a period of six months or more; and

3. A lessee having the right to possession, in the event a **motor vehicle** is the subject of a lease without option to purchase, and such lease agreement is for a period of six months or more, and the lease agreement provides that the lessee shall be responsible for securing insurance.

I. **"Pedestrian"** means a person while not **occupying** any self-propelled vehicle.

J. **"Reasonable accessible"** means any location within the municipality where the **covered person** is receiving treatment, or in which the **covered person** resides, or within 10 miles by road of a **covered person's** residence, provided such location is within the county in which the **covered person** resides.

If there is no qualified physician to conduct the examination in a location **reasonably accessible** to the **covered person**, then such examination shall be conducted in an area of the closest proximity to the insured's residence.

0901119ca4d9253f         USAA Confidential

**(PART B-1 Cont'd.)**

K. **"Reasonable fee"** is no more than 80 percent of the following schedule of maximum charges:

1. Two hundred (200) percent of Medicare for emergency transport and treatment by providers licensed under chapter 401.

2. Seventy-five (75) percent of the hospital's usual and customary charges for emergency services and care provided by a hospital licensed under chapter 395.

3. The usual and customary charges in the community for emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist.

4. Two hundred (200) percent of Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services for hospital inpatient services, other than emergency services and care.

5. Two hundred (200) percent of Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services for hospital outpatient services, other than emergency services and care.

6. For all other medical services, supplies and care, two hundred (200) percent of the allowable amount under:

   a. Medicare Part B, except as provided in 6.b and 6.c. below;

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories;

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment; or

   d. If such services, supplies or care are not reimbursable under Medicare Part B, **we** may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided.

   For purposes of this definition (K.), the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services are rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the applicable schedule of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

L. **"Replacement services expenses"** means, with respect to the period of disability of the **covered person**, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the **covered person** would have performed without income for the benefit of the **covered person's** household.

M. **"Work loss"** means, with respect to the period of disability of the **covered person**, 60 percent of gross income and earning capacity from inability to work proximately caused by the **BI** sustained by the **covered person**. However, **"work loss"** does not include any loss after death of a **covered person**.

N. **"Your covered auto"** as used in this Part does not include any **miscellaneous vehicle** or **motorcycle** for which security is not required under the Florida Motor Vehicle No-Fault Law.

0901119ca4d9253f

USAA Confidential

**(PART B-1 Cont'd.)**

**INSURING AGREEMENT**

A. **We** will pay, in accordance with the Florida Motor Vehicle No-Fault Law, as amended, to or for the benefit of the **covered person**:

1. **Medical benefits**; and

2. **Work loss**; and

3. **Replacement services expenses**; and

4. Death benefits of $5,000. Death benefits are in addition to the **medical benefits**, **work loss** and **replacement services expenses** provided under the insurance policy.

These must be incurred as a result of **BI** (1) caused by an accident arising out of the ownership, maintenance, or use of a **motor vehicle** and (2) sustained by a **covered person**.

B. **We** will not be liable for subsequent PIP benefits if a **covered person** unreasonably refuses to submit to an examination as required in Part E - General Provisions, Duties After an Accident or Loss.

C. Whenever a person making a claim is charged with committing a felony, **we** shall withhold PIP benefits until 30 days after **we** receive notice that the prosecution, at the trial level, makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed, or the person is acquitted.

D. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **reasonable fees** for **medically necessary** and appropriate services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **reasonable fees** and reasonable expenses, but such additional charges are not covered.

E. If the service provider sues the **covered person** because **we** refuse to pay expenses that **we** determine are unreasonable or unnecessary, **we** will settle or defend the suit, as **we** consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered person** must cooperate with **us** in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

F. **We** may utilize Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies or care if the coding policy or payment methodology does not constitute a utilization limit.

**LIMIT OF LIABILITY**

A. Regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident, the total aggregate limit of PIP benefits available under Florida Motor Vehicle No-Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains **BI** as the result of one accident shall not exceed the amount indicated on the Declarations.

B. Any amount payable under PIP Coverage shall be reduced by the amount of benefits a **covered person** has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any state or the Federal Government.

**5100FL(02)** Rev. 10-12

0901119ca4d9253f

USAA Confidential

**(PART B-1 Cont'd.)**

C. **We** will reserve $5,000 of PIP benefits for payment to physicians licensed under chapter 458 or chapter 459 or dentists licensed under chapter 466 who provide emergency services and care, as defined in s. 395.002, or who provide hospital inpatient care. The amount held in reserve will be used only to pay claims from such physicians or dentists until 30 days after the date **we** receive notice of the accident. After the 30-day period, any amount of the reserve for which we have not received notice of such claims may be used to pay other PIP benefits for loss or expense incurred because of the accident.

**APPLICATION OF DEDUCTIBLE**

The amount of any deductible stated on the Declarations, incurred by or on behalf of each person to whom the deductible applies and who sustains **BI** as a result of any one accident, shall be deducted from 100% of the **medical benefits**, **work loss**, and **replacement services expenses** described in F.S. s. 627.736(1) before the application of any percentage limitation that may result because of the lack of Medical Payments benefits coverage. Such deductible shall not apply to:

1. The death benefit; or

2. Any person determined eligible pursuant to the Florida Crime Compensation Act, excluding s. 960.28 of the act.

**EXCLUSIONS**

A. **We** do not provide PIP Coverage for **BI** sustained by any **covered person**:

1. While **occupying** a **motor vehicle** you own that is not **your covered auto** under this Part;

2. While **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (A.2.)

does not apply to **you**.

3. While operating **your covered auto** without expressed or implied consent;

4. If that **covered person** intentionally caused the **BI**;

5. While committing a felony;

6. For **work loss** if an entry on the Declarations indicates such coverage does not apply; or

7. While **occupying** a **motor vehicle** located for use as a residence or premises.

B. **We** will not pay benefits under PIP Coverage for services, supplies or care that is not reimbursable under Medicare or Florida workers' compensation law.

C. **We** will not pay benefits under PIP Coverage for any person:

1. Entitled to PIP benefits from:

   a. The owner of a **motor vehicle** other than **you**; or

   b. That owner's insurer.

2. Who owns an uninsured motor vehicle subject to the Florida Motor Vehicle No-Fault Law, as amended.

**OTHER INSURANCE**

A. If there is other applicable PIP Coverage, **we** will pay only **our** share of the loss and of expenses incurred in processing the claim. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. If a **covered person** is injured while **occupying**, or when struck by, a **motor vehicle** rented or leased under a rental or lease agreement, PIP Coverage under the lessor's policy will be primary unless a statement in bold type on the face of the rental or lease agreement, specifies that PIP Coverage afforded under the lessor's policy shall be excess.

**5100FL(02)** Rev. 10-12

0901119ca4d9253f

USAA Confidential

# PART B-2 - MEDICAL PAYMENTS COVERAGE

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member** while **occupying** any auto.

2. Any other person while **occupying your covered auto**.

3. **You** or any **family member** while not **occupying** a motor vehicle if injured by:

   a. A motor vehicle designed for use mainly on public roads;

   b. A **miscellaneous vehicle**; or

   c. A **trailer**.

B. **"Medical payment fee"** is an amount, as determined by **us** or someone on **our** behalf, that **we** will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services**. The amount that **we** will pay will be one of the following:

1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

3. The amount negotiated with the provider; or

4. The lesser of the following:

   a. The actual amount billed; or

   b. A reasonable fee for the service provided.

C. **"Medically necessary and appropriate medical services"** are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by **us** or someone on **our** behalf, are required to identify or treat **BI** caused by an auto accident and sustained by a **covered person** and that are:

1. Consistent with the symptoms, diagnosis, and treatment of the **covered person's** injury and appropriately documented in the **covered person's** medical records;

2. Provided in accordance with recognized standards of care for the **covered person's** injury at the time the charge is incurred;

3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

4. Not primarily for the convenience of the **covered person**, his or her physician, hospital, or other health care provider;

5. The most appropriate supply or level of service that can be safely provided to the **covered person**; and

6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, **"medically necessary and appropriate medical services"** do not include the following:

1. Nutritional supplements or over-the-counter drugs;

USAA Confidential

0901119ca4d9253f

**(PART B-2 Cont'd.)**

2. Experimental services or supplies, which means services or supplies that **we** determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed;

3. Inpatient services or supplies provided to the **covered person** when these could safely have been provided to the **covered person** as an outpatient;

4. Spinal ultrasound, also known as sonography, ultrasonography and echography;

5. Surface EMG;

6. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining **BI** covered by Medical Payments Coverage; and

7. Dermatomal Evoked Potential.

**INSURING AGREEMENT**

A. **We** will pay only the **medical payment fee** for **medically necessary and appropriate medical services** and the reasonable expense for funeral services. These fees and expenses must:

1. Result from **BI** sustained by a **covered person** in an auto accident; and

2. Be incurred for services rendered within three years from the date of the auto accident.

B. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **medical payment fees** for **medically necessary and appropriate medical services** or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **medical payment fees** and reasonable expenses, but such additional charges are not covered.

For purposes of this Part, **we** shall not be considered to have been furnished with notice of the amount of a covered loss or medical bills due unless the statements or bills are properly completed in their entirety, with all relevant information being provided.

1. All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to **us** on a properly completed:

   a. Centers for Medicare and Medicaid Services (CMS) 1500 form; or

   b. UB 92 form.

2. For purposes of this Part, "properly completed" means that the billing shall, to the extent applicable, use the following in effect for the year in which services are rendered:

   a. The Physicians' Current Procedural Terminology (CPT);

   b. Healthcare Correct Procedural Coding System (HCPCS); and

   c. ICD-9.

3. In addition to the references shown in B.2.a. through B.2.c. above, **we**, or someone on **our** behalf, may seek guidance from one or more of the following to determine whether a form is "properly completed":

   a. The Office of the Inspector General (OIG);

   b. Physicians Compliance Guidelines; and

   c. Other authoritative treatises designated by rule by the Agency for Health Care Administration.

0901119ca4d9253f

USAA Confidential

**(PART B-2 Cont'd.)**

4. All providers, other than hospitals, shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

5. No statement of medical services may include charges for medical services performed by a person or entity unless that person or entity possesses the valid licenses required to perform such services.

C. If the service provider sues the **covered person** because **we** refuse to pay expenses that **we** determine are unreasonable or unnecessary, **we** will settle or defend the suit, as **we** consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered person** must cooperate with **us** in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

D. **We** will not be liable for pending or subsequent benefits if a **covered person** or assignee of benefits under Medical Payments Coverage refuses to submit to an examination as required in Part E – General Provisions, Duties After an Accident or Loss.

## LIMIT OF LIABILITY

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each **covered person** injured in any one accident. This is the most **we** will pay regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

## EXCLUSIONS

**We** do not provide benefits under this Part for any **covered person** for **BI**:

1. Sustained while **occupying** any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

2. Sustained while **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while **occupying** any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by **you**.

6. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by any **family member**. This exclusion (6.) does not apply to **you**.

7. Sustained while **occupying** a vehicle without expressed or implied permission.

0901119ca4d9253f

USAA Confidential

**(PART B-2 Cont'd.)**

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to **BI** sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge**.

12. Sustained as a result of a **covered person's** exposure to **fungi**, wet or dry rot, or bacteria.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

**SPECIAL PROVISIONS**

A. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E - General Provisions, then coverage under Part B-2 - Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

B. Payment under Part B-2 - Medical Payments Coverage shall be applied to that portion of any claim for PIP medical expenses that is otherwise covered but not payable under PIP Coverage due to the limitation of 80% of medical expenses, regardless of whether the full amount of PIP benefits have been exhausted. However, Medical Payments Coverage shall not be payable for the amount of any deductible which has been selected under PIP Coverage.

# PART C - UNINSURED MOTORISTS COVERAGE
### (referred to as UM Coverage)

UM Coverage includes underinsured motorists coverage.

**DEFINITIONS**

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member**.

2. Any other person **occupying your covered auto**.

3. Any person for damages that person is entitled to recover because of **BI** to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies.

B. **"Uninsured Motor Vehicle."**

1. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

a. To which no liability bond or policy applies at the time of the accident.

b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

**5100FL(02)** Rev. 10-12

0901119ca4d9253f

USAA Confidential

**(PART C Cont'd.)**

c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in **BI** without hitting:

(1) **You** or any **family member**;

(2) A vehicle **you** or any **family member** is **occupying**; or

(3) **Your covered auto**.

d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent within 4 years after the accident.

2. **"Uninsured motor vehicle"** does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of **you** or any **family member**. This exclusion (2.a.) does not apply:

(1) If the vehicle or equipment is **your covered auto** to which Part A of this policy applies; and

(2) Liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member**.

b. Operated on rails or crawler treads, except for a snowmobile.

c. Designed mainly for use off public roads while not on public roads.

d. While located for use as a residence or premises.

**INSURING AGREEMENT**

A. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **BI**

sustained by a **covered person** and caused by an auto accident. However, **we** will not pay damages for pain, suffering, mental anguish, or inconvenience unless the **BI** consists in whole or in part of:

1. Significant and permanent loss of an important bodily function;

2. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

3. Significant and permanent scarring or disfigurement; or

4. Death.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle**. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

**LIMIT OF LIABILITY (STACKED)**

A. Accidents involving **BI** to **you** or any f**amily member**.

1. For **BI** sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage. Subject to this limit for "each person," **our** maximum limit of liability for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

0901119ca4d9253f

USAA Confidential

**(PART C Cont'd.)**

2. Notwithstanding the maximum limits of liability for "each person" and "each accident" set forth in A.1. above, for **BI** sustained in any one accident by a **covered person** other than **you** or any **family member**, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the lesser of:

   a. The "each person" limit of liability for UM Coverage shown on the Declarations applicable to the vehicle that person was **occupying** at the time of the accident; or

   b. That **covered person's** pro-rata share of the "each accident" limit of liability for UM Coverage shown on the Declarations applicable to that vehicle.

   **You** or any **family member** who sustains **BI** in the accident will also be entitled to a pro-rata share of the "each accident" limit of liability applicable to that vehicle. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all **covered persons**.

3. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons**;

   b. Claims made; or

   c. Vehicles involved in the accident.

B. Accidents not involving **BI** to **you** or any **family member**.

   1. For **BI** sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

Subject to this limit for "each person", **our** maximum limit for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage.

   2. These limits are the most **we** will pay, regardless of the number of:

      a. **Covered persons**;

      b. Claims made;

      c. Vehicles or premiums shown on the Declarations;

      d. Premiums paid; or

      e. Vehicles involved in the accident.

C. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid or payable because of the **BI**:

   1. Under any workers' compensation law, disability benefits law, or similar law; or

   2. Under any PIP Coverage, automobile medical expense coverage, or motor vehicle liability insurance.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

**EXCLUSIONS**

A. We do not provide UM Coverage for **BI** sustained by any **covered person**:

   1. If that person or legal representative settles the **BI** claim without **our** written consent. However, this exclusion (A.1.) does not apply:

      a. If such settlement does not prejudice **our** right to recover payment; or

0901119ca4d9253f

USAA Confidential

**(PART C Cont'd.)**

    b.  If that person or legal representative provides **us** with advance notice of any proposed settlement as required by Part E - General Provisions, Duties After an Accident or Loss.

2.  While **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (A.2.) does not apply to:

    a.  A share-the-expense car pool; or

    b.  **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3.  Using a vehicle without expressed or implied permission.

4.  While **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

5.  While **occupying** any vehicle when it is being operated in, or in practice for, any **driving contest or challenge**.

B.  UM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation law or similar disability benefits law.

C.  **We** do not provide UM Coverage for punitive or exemplary damages.

**OTHER INSURANCE**

If there is other applicable UM Coverage available under one or more policies or provisions of coverage:

1.  Any insurance **we** provide with respect to a vehicle **you** do not own or to a person other than **you** or any **family member** will be excess over any collectible insurance.

2.  If the coverage under this policy is provided:

    a.  On a primary basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

    b.  On an excess basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

**NON-DUPLICATION**

No **covered person** will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

1.  Paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible.

2.  Paid or payable under any workers' compensation law or similar disability benefits law.

3.  Paid under another provision or coverage in this policy.

4.  Paid under any PIP Coverage or under any automobile medical expense coverage.

**5100FL(02)** Rev. 10-12                             

0901119ca4d9253f

USAA Confidential

# PART D – PHYSICAL DAMAGE COVERAGE

## DEFINITIONS

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered **collision**: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, **you** may elect to have it considered a **loss** caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon **your covered auto**, other than:

1. Original manufacturer equipment, furnishings, or parts;

2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

3. Equipment, furnishings, or parts designed to assist disabled persons;

4. Anti-theft devices and devices intended to monitor or record driving activity; and

5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto**. **Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or **trailer** not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

2. A **nonowned vehicle** does not include any of the following vehicles used in any business or occupation other than farming or ranching:

   a. A pickup;

   b. A **van**; or

   c. A **miscellaneous vehicle**.

F. **"Repair."**

1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function, and appearance. This may include the replacement of component parts.

2. **Repair** does not require:

   a. A return to the pre-**loss** market value of the property;

0901119ca4d9253f

USAA Confidential

**(PART D Cont'd.)**

    b.  Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

    c.  Rekeying of locks following theft or misplacement of keys.

G.  **"Your covered auto,"** as used in this Part, includes:

    1.  **Custom equipment**, up to a maximum of $5,000, in or on **your covered auto**.

    2.  A **nonowned vehicle**. If there is a **loss** to a **nonowned vehicle**, **we** will provide the broadest coverage shown on the Declarations.

**INSURING AGREEMENT**

A.  Comprehensive Coverage (excluding **collision**).

    1.  Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations. However, **we** will pay for the cost of repairing or replacing the damaged windshield on **your covered auto** without a deductible.

    2.  Transportation expenses. **We** will also pay:

        a.  Up to $30 a day, to a maximum of $900, for transportation expenses incurred by **you** or any **family member**. This applies only in the event of a total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not **repairable**, up to seven days after **we** have made a settlement offer.

        b.  If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement for that vehicle.

B.  Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto**, including its equipment, and personal property contained in **your covered auto**, minus any applicable deductible shown on the Declarations.

C.  Rental Reimbursement Coverage (for **loss** other than total theft).

    1.  **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto**. This coverage applies only if:

        a.  **Your covered auto** is withdrawn from use for more than 24 hours due to a **loss**, other than a total theft, to that auto; and

        b.  The **loss** is covered under Comprehensive Coverage or caused by **collision**, and the cause of **loss** is not otherwise excluded under Part D of this policy.

    2.  **We** will reimburse **you** only for that period of time reasonably required to **repair** or replace **your covered auto**. If **we** determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

D.  USAA Roadside Assistance. **We** will pay the reasonable costs **you** or any **family member** incurs for one of the following each time **your covered auto** is disabled:

    1.  Mechanical labor up to one hour at the place of breakdown.

    2.  Locksmith services to gain entry to **your covered auto**. This does not include the rekeying of locks following theft or misplacement of keys.

0901119ca4d9253f

USAA Confidential

**(PART D Cont'd.)**

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, **we** do not pay for the cost of these items.

**LIMIT OF LIABILITY**

A. Total loss to **your covered auto**. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom equipment**.

1. The maximum amount **we** will include for **loss** to **custom equipment** in or on **your covered auto** is $5,000.

2. **We** will declare **your covered auto** to be a total loss if, in **our** judgment, the cost to **repair** it would be greater than its **actual cash value** minus its salvage value after the **loss**.

B. Other than a total loss to **your covered auto**:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to **repair** the **loss** based on **our** estimate or an estimate that **we** approve, if submitted by **you** or a third party. Upon request, **we** will identify at least one facility that is willing and able to complete the **repair** for the amount of the estimate.

2. **Our** estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts which are at least equivalent in kind and quality to the damaged parts prior to the **loss** in terms of fit, appearance, and performance.

3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. **You** will be responsible, however, for any cost

difference between the parts included in **our** estimate and the new OEM parts used in the **repair**.

4. **We** will not take a deduction for depreciation. **We** will take a deduction if prior damage has not been **repaired**. Prior damage does not include wear and tear.

C. Personal property contained in **your covered auto**. The limits of liability described below are separate from the limits available for a **loss** to **your covered auto**:

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

a. The amount necessary to replace the damaged or stolen property; or

b. $250.

2. **We** will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, **our** maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, **our** limit of liability is the reasonable price for the covered service.

**PAYMENT OF LOSS**

**We** may pay for **loss** in money, or **repair** or replace the damaged or stolen property. **We** may, at **our** expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it. **We** cannot be required to assume the ownership of damaged property. **We** may settle a claim either with **you** or with the owner of the property.

0901119ca4d9253f                                    USAA Confidential

**(PART D Cont'd.)**

## LOSS PAYABLE CLAUSE

**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the **loss** results from **your** conversion, secretion, or embezzlement of **your covered auto**. **We** may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the named insured shown on the Declarations. **We** may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that **we** not send notices, including a notice of cancellation, **we** will abide by that request. When **we** pay the loss payee **we** will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## WAIVER OF COLLISION DEDUCTIBLE

**We** will not apply the deductible to **loss** caused by **collision** with another vehicle if all of these conditions are met:

1. The **loss** to **your covered auto** is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of **your covered auto** is not legally responsible, in any way, for causing or contributing to the **loss**.

## EXCLUSIONS

**We** will not pay for:

1. **Loss** to **your covered auto** which occurs while it is being used to carry persons for a fee. This exclusion (1.) does not apply to:

a. A share-the-expense car pool; or

b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

a. Road damage to tires;

b. Wear and tear;

c. Freezing; or

d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. **We** will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3. **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. **Loss** to a camper body or **trailer** owned by **you** or any **family member** which is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family member** becomes the owner.

5. **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

0901119ca4d9253f

USAA Confidential

**(PART D Cont'd.)**

6. **Loss** to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. **Loss** to any **nonowned vehicle** arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8. **Loss** to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. **Loss** to any vehicle while it is being operated in, or in practice for, any **driving contest or challenge**.

10. **Loss** resulting from:

    a. The acquisition of a stolen vehicle;

    b. Any legal or governmental action to return a vehicle to its legal owner; or

    c. Any confiscation or seizure of a vehicle by governmental authorities.

    This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. **Loss** resulting from use in any illicit or prohibited trade or transportation.

12. Any **loss** arising out of any act committed:

    a. By or at the direction of **you** or any **family member**; and

    b. With the intent to cause a **loss**.

13. **Loss** caused by **fungi**, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of **fungi**, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

**MANDATORY PRE-INSURANCE INSPECTION**

A. **We** have the right to inspect any private passenger motor vehicle which **you** insure or intend to insure for Physical Damage Coverage under this policy. This right applies only in accordance with Florida Statute 627.744.

B. When **we** require an inspection, **you** must cooperate and make the vehicle available for the inspection.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the **loss**, **we** will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **nonowned vehicle**.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the **loss**.

This provision does not apply to USAA Roadside Assistance.

**APPRAISAL**

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

**5100FL(02)** Rev. 10-12

USAA Confidential

# PART E – GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the **covered person**, as defined in this policy, shall not relieve **us** of any obligations under this policy.

**CHANGES**

A. The premium is based on information **we** have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or is incorrect or incomplete, **we** may adjust **your** premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, **we** will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. **You** agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

1. Change in location where any vehicle is garaged.

2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

6. Addition or deletion of an operator.

7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of **our** policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

1. If, because of **your** active-duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your covered auto** and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

0901119ca4d9253f

USAA Confidential

**(PART E Cont'd.)**

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date **you** returned from deployment. If **you** wish to continue the reinstated coverage beyond the 60-day period, **you** must request it during the 60-day period. If **you** request reinstated coverage after this 60-day period, any coverage **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

3. **You** must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if **you** return from deployment on furlough or emergency leave for a period of 30 days or less, **we** will waive any increase in the premium for the period of time **you** are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs **we** will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and **you** must pay an additional premium for that coverage.

## CONFORMITY TO LAW

If any of the terms of this policy conflict with state or local law, state or local law will apply.

## DUTIES AFTER AN ACCIDENT OR LOSS

**We** will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. **We** must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A - Liability must:

1. Cooperate with **us** in the investigation, settlement, or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with a suit, accident, or loss.

3. Submit, as often as **we** reasonably require:

   a. To physical exams by physicians **we** select. **We** will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize **us** to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by **us**.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person or entity seeking coverage under Part B-1 - PIP Coverage or Part B-2 - Medical Payments Coverage.

1. As soon as practicable, give to **us** written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist **us** in determining the amount due and payable.

2. Submit as often as **we** reasonably require, to examination under oath. The examination must be signed.

3. Submit to mental examinations by physicians **we** select at **our** expense when and as often as **we** may reasonably require. Mental exams or physical exams as required by **us** in B.3.a. above will be scheduled in a location reasonably accessible to such person, and a copy of the medical report shall be forwarded to such person if requested. Reasonably accessible means any location:

   a. Within the municipality where such person is receiving treatment or in which that person resides; or

0901119ca4d9253f      USAA Confidential

**(PART E Cont'd.)**

   b.  Within 10 miles by road of such person's residence, provided such location is within the county in which that person resides.

      If there is no qualified physician to conduct the examination in a location reasonably accessible to such person, then the examination shall be conducted in an area of the closest proximity to that person's residence.

D.  A person seeking coverage under Part C – UM Coverage must also comply with the following:

  1.  If the **covered person** and the owner or operator of the **uninsured motor vehicle** reach a settlement agreement that would exhaust the owner's or operator's limits of liability, the **covered person** must submit the agreement to **us** in writing for **our** approval prior to final execution of the settlement agreement. This applies only if:

     a.  The settlement would not fully satisfy the **covered person's** claim for **BI**; and

     b.  A claim for UM Coverage has been or will be made against **us**.

  2.  The **covered person** may file suit against **us** and the owner or operator of the **uninsured motor vehicle** if, within 30 days after **our** receipt of the settlement agreement, **we** do not:

     a.  Approve the settlement;

     b.  Waive **our** rights of recovery against the owner or operator of the **uninsured motor vehicle**;

     c.  Authorize the signing of a full release; and

     d.  Agree to arbitrate the claim for UM Coverage.

The suit shall decide if the **covered person** is legally entitled to collect damages and, if so, the amount.

E.  A person seeking coverage under Part D – Physical Damage Coverage must also:

  1.  Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

  2.  Promptly notify the police if **your covered auto** is stolen.

  3.  Permit **us** to inspect and appraise the damaged property before its repair or disposal.

**LEGAL ACTION AGAINST US**

A.  No legal action may be brought against **us** until there has been full compliance with all the terms of this policy.

  1.  In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

  2.  In addition, under Part B-1 – PIP Coverage and Part B-2 – Medical Payments Coverage, if **we** fail to deny or pay a claim within 30 days of receiving adequate proof of that claim, the **covered person** shall not file suit for those benefits until providing **us** with a written demand for payment and giving **us** 30 days in which to respond to that demand. Any written demand for payment must include an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefits claimed to be due.

B.  No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

0901119ca4d9253f

USAA Confidential

**(PART E Cont'd.)**

C. Unless **we** agree otherwise, any legal action against **us** must be brought in a court of competent jurisdiction in the county and state where the **covered person** lived at the time of the accident.

## MEDIATION

**We** or the **covered person** may request mediation of any claim for **BI** in an amount of $10,000 or less or a claim for **PD** in any amount arising out of the ownership, operation, use, or maintenance of a motor vehicle prior to the institution of litigation.

Such request shall be filed with the Florida Department of Financial Services on a form approved by the department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation.

The filing of a request for mediation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the mediation process or the time prescribed in the Limitation of Actions, whichever is later.

## MISREPRESENTATION

**We** do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, **we** will pay for each element of loss only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable **us** to exercise **our** rights, and shall do nothing after loss to prejudice them. However, **our** rights in this paragraph do not apply:

1. Under Part C - UM Coverage, with respect to payments made because of the **BI** resulting from an accident with an **uninsured motor vehicle**, as defined in Definition 1.b. of that Part, if **we**:

   a. Have been given prompt written notice of a tentative settlement between a **covered person**, as defined in Part C, and the insurer of an **uninsured motor vehicle**; and

   b. Fail to advance payment to such person in an amount equal to the tentative settlement within 30 days after receipt of notification.

0901119ca4d9253f                    USAA Confidential

**(PART E Cont'd.)**

If **we** advance payment to the **covered person** in an amount equal to the tentative settlement within 30 days after receipt of notification, that payment will be separate from any amount the **covered person** is entitled to recover under the provisions of Part C – UM Coverage. However, **we** shall have a right to recover such advance payment.

2. Under Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

B. If **we** make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for **us** the proceeds of the recovery and reimburse **us** to the extent of **our** payment.

C. If the **covered person**, as defined in this policy, recovers from the party at fault and **we** share in the recovery, **we** will pay **our** share of the legal expenses. **Our** share is that percent of the legal expenses that the amount **we** recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by **us** from any other insurer under any inter-insurer arbitration agreement.

D. If **we** make payment for a claim under Part A, and the **covered person**, as defined in Part A:

1. Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2. Failed or refused to comply with the duties specified in this policy and prejudiced **our** defense of the liability claim by such failure or refusal;

then, the **covered person** shall reimburse **us** to the extent of **our** payment and cost of defense.

E. If **we** make payment for a claim under Part D and **you** or any **family member** has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then **you** shall reimburse **us** to the extent of **our** payment.

**OWNERSHIP**

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

**POLICY PERIOD AND TERRITORY**

A. This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of **your covered auto** between any ports of these locations.

However, PIP benefits under Part B-1 – PIP Coverage apply only to accidents occurring within the State of Florida with respect to any **covered person**, as defined in Part B-1 – PIP Coverage, other than **you** or any **family member**.

B. The policy territory also includes Mexico, subject to the following conditions:

1. All coverages afforded by the policy, except PIP Coverage, are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2. Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if **you** have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for **BI** or **PD** is brought in the USA.

**5100FL(02)** Rev. 10-12

USAA Confidential

0901119ca4d9253f

**(PART E Cont'd.)**

3. Coverage under this policy does not extend:

   a. To any **covered person**, as defined in this policy, who does not live in the USA.

   b. To any **covered person**, as defined in this policy, **occupying** a vehicle which is not principally garaged and used in the USA.

   c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance **we** provide will be excess over any other similar valid and collectible insurance.

**REDUCING THE RISK OF LOSS AND OTHER BENEFITS**

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items. **We** may also occasionally provide **you** with items, offers or services **we** think may benefit **you** or **your family members**. Such items, offers and services may be provided in any form **we** choose.

**SPOUSE ACCESS**

A. The named insured and we agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and **we** will not permit the resident spouse to access policy information.

**TERMINATION**

A. Cancellation. This policy may be cancelled during the policy period as follows:

   1. **You** may not cancel a new or renewal policy providing PIP Coverage or Property Damage Liability Coverage during the first 60 days this policy is in effect unless:

      a. **Your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

      b. Ownership of **your covered auto** is transferred; or

      c. Another policy is purchased to replace the policy being cancelled; or

      d. **You** are a member of the United States Armed Forces and are called to or on active duty outside the United States in an emergency situation.

   2. **You** may cancel this policy for any reason after this policy is in effect for 60 days, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

   3. **We** may cancel this policy by mailing a notice to the named insured shown on the Declarations at the most recent address **you** provided to **us** by giving:

      a. At least ten days notice if cancellation is for nonpayment of premium; or

      b. At least 45 days notice in all other cases.

**5100FL(02)** Rev. 10-12

USAA Confidential

**(PART E Cont'd.)**

4. If this is a new policy providing PIP Coverage and Property Damage Liability Coverage, **we** will not cancel for nonpayment of premium during the first 60 days following the date of issuance. However, **we** may cancel if a check used to pay **us** is dishonored for any reason.

5. After this policy is in effect for 60 days, or if this is a renewal policy, **we** will cancel only:

   a. For nonpayment of premium; or

   b. For material misrepresentation or fraud; or

   c. If **your** driver's license, or that of any driver who lives with **you** or customarily uses **your covered auto**, has been suspended or revoked. This must have occurred:

      (1) During the policy period or during the 180 days immediately preceding its effective date; or

      (2) If the policy is a renewal, during its policy period.

6. If this policy is issued to meet the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security, the following special provisions apply and supersede any contrary provisions in the policy:

   a. **You** may not cancel this policy for any reason.

   b. Effective when **our** underwriting is completed or 30 days from the effective date of the policy, whichever comes first:

      (1) **We** may not cancel this policy for any reason.

      (2) No refund of premium will be allowed.

   (3) This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk vehicle, adding vehicles, adding new drivers or moving to a different rating territory.

   (4) If there is a material change in the policy, **you** must obtain a new six-month non-cancellable policy. If **you** obtain the policy from **us**, **we** will give **you** a credit on the new policy for any unearned premium paid on the previously issued policy.

7. **We** may cancel for any other reason not prohibited by law.

B. Nonrenewal. If **we** decide not to renew this policy, **we** will mail notice by registered or certified mail or United States Post Office certificate of mailing to the named insured shown on the Declarations at the most recent address **you** provided to **us**. Notice will be mailed at least 45 days before the end of the policy period.

C. Automatic Termination.

1. If **we** offer to renew and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that **you** have not accepted **our** offer.

2. If **you** obtain other insurance on **your covered auto**, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Mailing of any notice by registered or certified mail or United States Post Office proof of mailing of any notice will be sufficient proof of notice.

0901119ca4d9253f

USAA Confidential

**(PART E Cont'd.)**

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to **our** manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**Your** rights and duties under this policy may not be assigned without **our** written consent. However, if the named insured shown on the Declarations dies, **we** will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy **we** issued to **you** apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM Coverage.

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of Insurance Services Office, used with permission.

0901119ca4d9253f

USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

0901119ca4d9253f

USAA Confidential

# **<u>EXHIBIT B</u>**

 USAA Casualty Insurance Company

# TOTAL LOSS SETTLEMENT

JENSEN GRANT
KANNER AND PINTALUGA
925 SOUTH FEDERAL HIGHWAY
BOCA RATON FL 33432

## Review Your Total Loss Settlement

May 21, 2019

Dear Jensen Grant,

This letter confirms our conversation on March 12, 2019 notifying you that your client's vehicle referenced below is a total loss.

| | |
|---|---|
| **USAA policyholder:** | Diaki R Almon |
| **Claim number:** | 014972527–022 |
| **Date of loss:** | February 23, 2019 |
| **Vehicle:** | 2018 NISSAN TTN CRW SL/PLAT |
| **VIN:** | 1N6AA1E68JN520002 |
| **Your client:** | DAVID SUTTON |

The settlement figure of $24,287.54 is represented as follows:

| | |
|---|---|
| Vehicle's actual cash value | $23,809.00 |
| State sales tax | $1,478.54 |
| Less deductible | $(1,000.00) |

## How to Contact Us

Please send any correspondence or questions to us using one of the following options and include the claim number above on each page mailed or faxed:

| | | |
|---|---|---|
| 📱 | **usaa.com or our mobile app:** | Upload documents or post a secure message to your claim file through the Claim Communication Center. |
| ✉️ | **Address:** | Salvage Recovery<br>P.O. Box 659474<br>San Antonio, TX 78265 |

**Fax:**        1-800-531-8669

**Phone:**      1-800-531-8722 Ext 25885


Sincerely,

*Jeffrey Munshour*

Jeffrey Munshour
Auto Security and Recovery - Total Loss
USAA Casualty Insurance Company

Enclosed:    AUTO POLICY PACKET



PAGE  1
MAIL MCH-M-I
Y1392
FEBRUARY 9, 2019

# AUTOMOBILE POLICY PACKET

DIAKI R ALMON
2375 SUPERIOR ST
OPA LOCKA FL 33054-4026

CIC      01497 25 27 7103  7

POLICY PERIOD:   EFFECTIVE MAR 30 2019 TO SEP 30 2019

## IMPORTANT MESSAGES

Refer to your Declarations Page and endorsements to verify that coverages, limits, deductibles and other policy details are correct and meet your insurance needs.  Required information forms are also enclosed for your review.

Check your vehicle for a safety recall today! Visit www.usaa.com/autorecall to learn more.

To comply with Florida's Personal Injury Protection and Property Damage law, you must report any changes to your Florida vehicle registration to us immediately.

With this renewal, your premium has increased due to a rate change in your state or because of your policy's individual risk characteristics. See your Declarations for the new premium. Contact us if you have any questions.

Thank you for renewing your policy and allowing us to continue servicing your insurance needs. If you have any concerns or need to modify or cancel the renewal policy, please contact us immediately.

TEXTING & DRIVING … It Can Wait! Join USAA in the movement against distracted driving by going to http://itcanwait.usaa.com to watch powerful videos and take the pledge to not text and drive!

Coverage exclusions apply when your vehicle is used in ride sharing. If you need coverage for ride sharing activities, we're pleased to offer Ride Share Gap Protection. Please contact us for more information or to obtain a quote.

This is not a bill.        Any premium charge or change for this policy will be reflected on your next regular monthly statement. Your current billing statement should still be paid by the due date indicated.

**To receive this document and others electronically, or manage your Auto Policy online, go to usaa.com.**

For U.S. calls:   Policy Service (800) 531-8111. Claims (800) 531-8222.

USAA Confidential

0901119ca3e604b0

**THIS PAGE INTENTIONALLY LEFT BLANK**

USAA Confidential

PAGE   3
CIC        01497  25  27          7103  7

## AUTOMOBILE POLICY PACKET CONTINUED

USAA considers many factors when determining your premium.  Maintaining safe driving habits is one of the most important steps you can take in keeping your premium as low as possible.  A history of claim or driving activity and your USAA payment history may affect your policy premium.

We have provided your ID cards in this packet.  You can use the cards to show proof of insurance, if necessary.

ACS2

0901119ca3e604b0

FLORIDA AUTOMOBILE INSURANCE IDENTIFICATION CARD

## USAA CASUALTY INSURANCE COMPANY

| POLICY IDENTIFICATION NO. | CO. CODE | EFF. DATE |
|---|---|---|
| 01497 25 27C    7103   7   -02865 | | 03/30/19 |

[X] PERSONAL INJURY PROTECTION BENEFITS AND PROPERTY DAMAGE LIABILITY

[X] BODILY INJURY LIABILITY

**Name**
DIAKI R ALMON
DAVID SUTTON

VEHICLE DESCRIPTION

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2012 | HONDA | 1HGCS1B84CA020722 |

**NOT VALID MORE THAN ONE YEAR FROM EFFECTIVE DATE**
Misrepresentation of Insurance is a first degree misdemeanor. Policy coverages extend to a rental car. See outline of coverage.

9800 Fredericksburg Road
San Antonio, Texas 78288

**CONTACT US: 210-531-USAA(8722)**
OR 800-531-USAA
Additional copies available at **usaa.com**

## Automobile Insurance Identification Card

We've issued an identification card as evidence of liability insurance for your vehicle(s). This card is valid only as long as liability insurance remains in force.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident or upon a law enforcement officer's request.

**Keep a copy of the ID card in your vehicle at all times.**

For your convenience, additional copies are available on usaa.com.

**922 FL**2 Rev. 06–13

51798–0613__02

FLORIDA AUTOMOBILE INSURANCE IDENTIFICATION CARD

## USAA CASUALTY INSURANCE COMPANY

| POLICY IDENTIFICATION NO. | CO. CODE | EFF. DATE |
|---|---|---|
| 01497 25 27C    7103   7   -02865 | | 03/30/19 |

[X] PERSONAL INJURY PROTECTION BENEFITS AND PROPERTY DAMAGE LIABILITY

[X] BODILY INJURY LIABILITY

**Name**
DIAKI R ALMON
DAVID SUTTON

VEHICLE DESCRIPTION

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2014 | HONDA | 1HGCR3F89EA027993 |

**NOT VALID MORE THAN ONE YEAR FROM EFFECTIVE DATE**
Misrepresentation of Insurance is a first degree misdemeanor. Policy coverages extend to a rental car. See outline of coverage.

9800 Fredericksburg Road
San Antonio, Texas 78288

**CONTACT US: 210-531-USAA(8722)**
OR 800-531-USAA
Additional copies available at **usaa.com**

USAA Confidential

**Automobile Insurance Identification Card**

We've issued an identification card as evidence of liability insurance for your vehicle(s). This card is valid only as long as liability insurance remains in force.

You may be required to produce your identification card at vehicle registration or inspection, when applying for a driver's license, following an accident or upon a law enforcement officer's request.

**Keep a copy of the ID card in your vehicle at all times.**

For your convenience, additional copies are available on usaa.com.

**922 FL** 1 Rev. 06–13                                                     51798-0613__02

---

FLORIDA AUTOMOBILE INSURANCE IDENTIFICATION CARD

**USAA CASUALTY INSURANCE COMPANY**

| POLICY IDENTIFICATION NO. | CO. CODE | EFF. DATE |
|---|---|---|
| 01497 25 27C   7103  7  -02865 | 03/30/19 |

[X] PERSONAL INJURY PROTECTION BENEFITS AND PROPERTY DAMAGE LIABILITY   [X] BODILY INJURY LIABILITY

**Name**
DIAKI R ALMON
DAVID SUTTON

VEHICLE DESCRIPTION

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2018 | NISSAN | 1N6AA1E68JN520002 |

**NOT VALID MORE THAN ONE YEAR FROM EFFECTIVE DATE**
Misrepresentation of Insurance is a first degree misdemeanor. Policy coverages extend to a rental car. See outline of coverage.

9800 Fredericksburg Road
San Antonio, Texas 78288

**CONTACT US: 210-531-USAA(8722)**
OR 800-531-USAA
Additional copies available at **usaa.com**

**USAA Confidential**

0901119ca3e604b0

# USAA CASUALTY INSURANCE COMPANY

(A Stock Insurance Company)
9800 Fredericksburg Road · San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

APPL INFO ON NEXT PAGE - MAIL MCH M-I
RENEWAL OF

| State | 10 12 13 | Veh | POLICY NUMBER |
| FL | 524 524 524 | Terr | 01497 25 27C 7103 7 |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE MAR 30 2019 TO SEP 30 2019**

**Named Insured and Address**

DIAKI R ALMON
2375 SUPERIOR ST
OPA LOCKA FL 33054-4026

OPERATORS
01 DIAKI R ALMON
07 DAVID SUTTON

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* | WORK/SCHOOL Miles One Way | Days Per Week |
|-----|------|-----------|-------|-----------|----------------|----------------------|-----|----------|----|----|
| 10 | 12 | HONDA | ACCORD | 2 DOOR | 6000 | 1HGCS1B84CA020722 | | P | | |
| 12 | 14 | HONDA | ACCORD | 4D | 12000 | 1HGCR3F89EA027993 | | P | | |
| 13 | 18 | NISSAN | TITAN | 4D | 14000 | 1N6AA1E68JN520002 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure
VEH 10   OPA LOCKA FL 33054-4026          VEH 13   OPA LOCKA FL 33054-4026
VEH 12   OPA LOCKA FL 33054-4026

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES          LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 10 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 12 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 13 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | |
| BODILY INJURY    EA PER $   50,000 | | | | | | | | |
| EA ACC $  100,000 | | 282.30 | | 360.38 | | 364.17 | | |
| PROPERTY DAMAGE EA ACC $   50,000 | | 114.38 | | 124.98 | | 161.21 | | |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | |
| MAXIMUM BENEFITS         $10,000 | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | D1000 | 130.49 | D1000 | 155.18 | D1000 | 115.81 | | |
| PART C - UNINSURED MOTORISTS | | | | | | | | |
| STACKED | | | | | | | | |
| BODILY INJURY    EA PER $   50,000 | | | | | | | | |
| EA ACC $  100,000 | | 283.39 | | 317.27 | | 317.27 | | |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| COMPREHENSIVE LOSS      ACV LESS | | | D1000 | 128.21 | D1000 | 152.80 | | |
| COLLISION LOSS         ACV LESS | | | D1000 | 232.53 | D1000 | 337.40 | | |
| RENTAL REIMBURSEMENT | | | | | | | | |
| ECONOMY CLASS | | | | 18.96 | | | | |
| MULTIPASSENGER/TRUCK CLASS | | | | | | 27.88 | | |

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

VEH 10  ADDNL INTEREST - CO-OWNER DAVID SUTTON,
   OPA LOCKA, FL  ENDT A073 APPLIES

ENDORSEMENTS: ADDED 03-30-19 -  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)-  A073(05)  ACCFOR(01)  A402FL(01)
   A132(02)  RSGPFL(01)  5100FL(02)
INFORMATION FORMS:  999FL(03)
J2  1

| 10 XXX40 00000 | 12 RSF39 00000 | 13 RSM41 00000 | | | | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
on this date  FEBRUARY 9, 2019
COUNTERSIGNED BY

_MARIA ELENA MCALEXANDER_

Deneen Donnley, Secretary   S. Wayne Peacock, President

5000 C 05-12
53383-05-12
0901119ca3e604b0

USAA Confidential

Case 1:19-cv-23738-FAM Document 1-1 Entered on FLSD Docket 09/09/2019 Page 63 of 83

**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)
9800 Fredericksburg Road - San Antonio, Texas 78288

FLORIDA AUTO POLICY
RENEWAL DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | | | | Veh | POLICY NUMBER |
|---|---|---|---|---|---|
| FL | 10 | 12 | 13 | | 01497 25 27C 7103 7 |
| | 524 | 524 | 524 | Terr | |

POLICY PERIOD: (12:01 A.M. standard time)
**EFFECTIVE MAR 30 2019 TO SEP 30 2019**

**Named Insured and Address**

DIAKI R ALMON
2375 SUPERIOR ST
OPA LOCKA FL 33054-4026

## Description of Vehicle(s)

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE 1 | Miles One Way | Days Per Week |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 | 12 | HONDA | ACCORD | 2 DOOR | 6000 | 1HGCS1B84CA020722 | | P | | |
| 12 | 14 | HONDA | ACCORD | 4D | 12000 | 1HGCR3F89EA027993 | | P | | |
| 13 | 18 | NISSAN | TITAN | 4D | 14000 | 1N6AA1E68JN520002 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. * W/C=Work/School; B=Business; F=Farm; P=Pleasure

VEH 10   OPA LOCKA FL 33054-4026                    VEH 13   OPA LOCKA FL 33054-4026
VEH 12   OPA LOCKA FL 33054-4026

**This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.**

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | VEH 10 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 12 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH 13 6-MONTH D=DED AMOUNT | PREMIUM $ | VEH D=DED AMOUNT | PREMIUM $ |
|---|---|---|---|---|---|---|---|---|
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | |
| TOWING AND LABOR | | | | 8.00 | | 8.00 | | |
| | | | | | | | | |
| VEHICLE TOTAL PREMIUM | | 810.56 | | 1345.51 | | 1484.54 | | |

6 MONTH PREMIUM $ 3640.61
PREMIUM DUE AT INCEPTION. THIS IS NOT A BILL, STATEMENT TO FOLLOW.

EARNED ACCIDENT FORGIVENESS APPLIES WITH FIVE YEARS CLEAN DRIVING WITH USAA.
THE FOLLOWING COVERAGE(S) DEFINED IN THIS POLICY ARE NOT PROVIDED FOR:
  VEH 10 - MEDICAL PAYMENTS, COMPREHENSIVE, COLLISION, RENTAL REIMBURSEMENT,
           TOWING AND LABOR
  VEH 12 - MEDICAL PAYMENTS
  VEH 13 - MEDICAL PAYMENTS

| V H 10 | XXX40 00000 | V H 12 | RSF39 00000 | V H 13 | RSM41 00000 | V H | |
|---|---|---|---|---|---|---|---|

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                          on this date FEBRUARY 9, 2019

5000 C 05-12
53383-05-12

MARIA ELENA MCALEXANDER

Deneen Donnley, Secretary   S. Wayne Peacock, President

USAA Confidential

0901119ca3e604b0

**SUPPLEMENTAL INFORMATION**

**EFFECTIVE MAR 30 2019 TO SEP 30 2019**

The following approximate premium discounts or credits have already been applied to reduce your policy premium costs.

NOTE: Age or **senior citizen** status, if allowed by your state/location, was taken into consideration when your rates were set and your premiums have already been adjusted.

```
VEHICLE 10
    ANNUAL MILEAGE DISCOUNT                    -$    61.58
    ANTI-LOCK BRAKE DISCOUNT                   -$    15.25
    MULTI-CAR DISCOUNT                         -$   137.01
    PASSIVE RESTRAINT DISCOUNT                 -$    21.59
    PREMIER DRIVER LEVEL DISCOUNT              -$   147.27

VEHICLE 12
    ANTI-LOCK BRAKE DISCOUNT                   -$    25.47
    ANTI-THEFT DISCOUNT                        -$    13.70
    DAYTIME RUNNING LIGHTS DISCOUNT            -$     6.72
    MULTI-CAR DISCOUNT                         -$   223.08
    PASSIVE RESTRAINT DISCOUNT                 -$    25.95
    PREMIER DRIVER LEVEL DISCOUNT              -$   246.00

VEHICLE 13
    ANTI-LOCK BRAKE DISCOUNT                   -$    28.73
    ANTI-THEFT DISCOUNT                        -$    16.44
    DAYTIME RUNNING LIGHTS DISCOUNT            -$     9.96
    MULTI-CAR DISCOUNT                         -$   246.05
    NEW VEHICLE DISCOUNT                       -$    93.64
    PASSIVE RESTRAINT DISCOUNT                 -$    19.00
    PREMIER DRIVER LEVEL DISCOUNT              -$   277.52
```

## Florida Uninsured Motorists Coverage
## Rejection/Selection Form and Annual Option Notice

**YOU ARE ELECTING NOT TO PURCHASE CERTAIN VALUABLE COVERAGE WHICH PROTECTS YOU AND YOUR FAMILY OR YOU ARE PURCHASING UNINSURED MOTORIST LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM. PLEASE READ CAREFULLY.**

Below, you will find a brief explanation of Uninsured Motorists (UM) Coverage. Please remember that this explanation is only an overview, and it does not replace or supplement any of the provisions of your policy. Please see your policy for details because the policy controls all issues of coverage.

The decisions you make regarding the amount of coverage will affect your insurance premium. If you have questions, please call Policy Service at 1–800–531–USAA (8722). **You may complete this form online on usaa.com.**

**WHAT IS UM COVERAGE?**
* Protects you, your family and any other legally entitled person due to injuries arising from a motor vehicle accident caused by an uninsured or hit–and–run motorist who is at–fault.
* Pays if you, your family and any other person occupying your covered auto is injured by an at–fault motorist whose Bodily Injury (BI) Liability limits are less than the amount of damages you are legally entitled to recover from the at–fault motorist. The at–fault motorist's policy pays its BI Liability limits first, then your UM Coverage pays the lesser of:
  * any remaining loss, or
  * your UM Coverage limits.

**HOW IS UM COVERAGE ISSUED?**
* A new policy must be issued with UM Coverage limits equal to your BI Liability limits unless you reject UM Coverage or select lower UM Coverage limits by completing, signing, and returning the Rejection/Selection Form by mail or on **usaa.com.**
* UM Coverage limits cannot exceed the BI Liability limits on the policy.

**RENEWAL/EXISTING POLICIES:**
* If you have previously purchased or rejected UM Coverage, your current policy declaration page reflects that choice.
* Your rejection of UM Coverage or selection of lower UM Coverage limits will remain in effect on this policy and on future renewals which are issued at the same bodily injury limits until you request otherwise in writing.
* If you change your BI Liability limits, your UM Coverage limits will equal your revised BI Liability limits unless you complete a new rejection/selection form.

**STACKED UM COVERAGE:**
* "Stacked" UM Coverage means the maximum limit of liability for any one accident is the UM Coverage limit on the Declarations Page multiplied by the number of vehicles insured for UM Coverage on your policy. For example, if you purchase UM limits of $100,000 per person and $300,000 per accident on two vehicles, you would have total UM Coverage of $200,000 per person and $600,000 per accident ($100,000/300,000 x 2).
* The amount of UM coverage available would automatically change during the policy term if you increase or decrease the number of vehicles insured for UM under the policy.

YOUR POLICY WILL BE ISSUED WITH THE STACKED FORM OF UM UNLESS YOU SELECT NON–STACKED UM ON THIS FORM. NON–STACKED UM IS EXPLAINED BELOW. YOUR PREMIUMS ARE HIGHER BASED UPON "STACKED" LIMITS.

**999FL(03)** Rev. 02–15

PS.014972527.999FL.07103



60874–0715
Page 1 of 4

USAA Confidential

**NON-STACKED UM COVERAGE:**

You have the option to purchase a non−stacked (limited) form of UM Coverage. Under this type of coverage, if injury occurs in a vehicle owned or leased by you or any family member who resides with you, you will only be entitled to the amount of UM Coverage purchased for that vehicle. If an injury occurs while occupying someone else's vehicle, or you are struck as a pedestrian, you are entitled to select the highest limit of UM Coverage available on any one vehicle for which you are a named insured, insured family member, or insured resident of the named insured's household. This policy will not apply if you select the coverage available under any other policy issued to you or to any other family member who resides with you.



USAA Confidential

0901119ca3e604b0

**If you do not wish to make any changes to your current policy, no action is required.** TO MAKE CHANGES TO YOUR POLICY, PLEASE COMPLETE THIS FORM, SIGN, AND RETURN IT TO US. The premiums below reflect the total premium for this coverage for all vehicles insured on this Policy.

### UNINSURED MOTORISTS (UM) COVERAGE
#### Semi-annual premium per policy

| Stacked Premium | | Limits<br>Per person / per accident | | Non-Stacked Premium |
|---|---|---|---|---|
| $   460.05 | $   10,000 | $   20,000 | $   201.83 |
| $   594.61 | $   15,000 | $   30,000 | $   266.92 |
| $   679.24 | $   20,000 | $   40,000 | $   323.34 |
| $   744.33 | $   25,000 | $   50,000 | $   379.76 |
| $   917.93 | $   50,000 | $  100,000 | $   585.93 |
| $  1059.00 | $  100,000 | $  200,000 | $   761.69 |
| $  1080.70 | $  100,000 | $  300,000 | $   787.73 |
| $  1317.24 | $  300,000 | $  500,000 | $   987.39 |
| $  1399.70 | $  500,000 | $  500,000 | $  1106.74 |
| $  1408.38 | $  500,000 | $1,000,000 | $  1115.42 |
| $  1445.27 | $ 1,000,000 | $1,000,000 | $  1154.48 |

### Rejection/Selection

To make a change to your current policy, you must check one of the following boxes:

☐ I reject both STACKED and NON-STACKED UM Coverage entirely.

☐ I want the NON-STACKED form of UM Coverage at limits equal to my BI Liability limits.

☐ I want the STACKED form of UM Coverage at limits of  $_____ per person,

$_____ per accident, which are lower than my BI Liability limits.

☐ I want  the NON-STACKED  form of  UM Coverage at limits of  $_____ per person,

$_____  per accident, which are lower than my BI Liability limits.

☐ I want the STACKED form of UM Coverage at limits equal to my BI Liability limits. Please disregard the bold statement on page 1 if this selection is made.

### DO NOT SIGN UNTIL YOU READ THIS FORM COMPLETELY

_____    _____
USAA Number                         Signature of Named Insured

_____    _____    _____
Home phone                          Alternative phone                Date

Please complete this form and fax it to 1-800-531-8877 or mail it to USAA, 9800 Fredericksburg Road, San Antonio, Texas 78288; **or complete this form on usaa.com.**

If this form is sent by facsimile machine (fax), the sender adopts the document USAA receives as a duplicate original and adopts the signature the receiving fax machine produces as the sender's original signature.

**999FL(03)** Rev. 02-15                                Page 3 of 4

PS.014972527.999FL.07103

USAA Confidential

0901119ca3e604b0

LAST PAGE 12
CIC      01497 25 27     7103

THIS PAGE INTENTIONALLY LEFT BLANK



USAA Confidential

0901119ca3e604b0

# **<u>EXHIBIT C</u>**



# MARKET VALUATION REPORT

*Prepared for USAA CASUALTY INSURANCE COMPANY*

 REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Almon, Diaki |
| | 2375 Superior St,null,null |
| | Opa Locka, FL 33054 |
| Loss Vehicle | 2018 Nissan Titan SV Crew Cab |
| Loss Incident Date | 02/23/2019 |
| Claim Reported | 03/07/2019 |

### BRANDED TITLE

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by USAA CASUALTY INSURANCE COMPANY.

Loss vehicle has 38% fewer than average mileage of 13,600.

## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 92121617 |
| Claim Reference | 014972527000000022001 |
| Adjuster | Figueroa, Shanti |
| Appraiser | Gavazzi, Luis |
| Odometer | 8,368 |
| Last Updated | 03/12/2019 01:06 PM |

## VALUATION SUMMARY

| | |
|---|---|
| **Base Vehicle Value** | **$ 22,819.00** |
| Condition Adjustment | + $ 990.00 |
| **Adjusted Vehicle Value** | **$ 23,809.00** |
| Vehicular Tax (6.21%) | + $ 1,478.54 |
| Tax reflects applicable state, county and municipal taxes. | |

# Total         $ 25,287.54

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

This is derived per our valuation methodology described on the next page.

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology.............................2
Vehicle Information..................................3
Vehicle Condition....................................6
Comparable Vehicles...............................7
Valuation Notes.......................................9
Supplemental Information.....................10

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

**CCC ONE.**  **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# VALUATION METHODOLOGY

### How was the valuation determined?



**CLAIM INSPECTION**

USAA CASUALTY INSURANCE COMPANY has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle. The market value of this vehicle without a branded title is provided in the associated total loss valuation # 92121618 and is for the sum of $ 30,904.00.



CCC maintains a database of vehicles that currently are or recently marked as Branded Titles in the U.S. This database includes vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.



When a valuation is created the database is searched and comparable branded title vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable branded title vehicles are similar to the loss vehicle based on relevant factors. CCC may also survey dealers to determine the market value impact of the branded title.



Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.
Finally, the Base Vehicle Value is the average of the adjusted values of the comparable vehicles.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# 🚙 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | OPA LOCKA, FL 33054 |
| VIN | 1N6AA1E68JN520002 |
| Year | 2018 |
| Make | Nissan |
| Model | Titan |
| Trim | SV |
| Body Style | Crew Cab |
| Body Type | Shortbed Pickup |
| Engine - | |
| Cylinders | 8 |
| Displacement | 5.6L |
| Fuel Type | Gasoline |
| Carburation | Gasoline Direct Injection |
| Transmission | Automatic Transmission |
| Curb Weight | 5508 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | Title Check |
| National Highway Traffic Safety Administration | 1 Recall |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# 🚙 VEHICLE INFORMATION

### VEHICLE EQUIPMENT

| | |
|---|---|
| **Odometer** | 8,368 |
| **Transmission** | Automatic Transmission |
| **Power** | Power Steering |
| | Power Brakes |
| | Power Windows |
| | Power Locks |
| **Decor/Convenience** | Air Conditioning |
| | Tilt Wheel |
| | Cruise Control |
| | Rear Defogger |
| | Intermittent Wipers |
| | Keyless Entry |
| | Telescopic Wheel |
| **Seating** | Cloth Seats |
| **Radio** | AM Radio |
| | FM Radio |
| | Stereo |
| | Search/Seek |
| | CD Player |
| | Steering Wheel Touch Controls |
| | Auxiliary Audio Connection |
| **Wheels** | 20" Or Larger Wheels |
| **Safety/Brakes** | Air Bag (Driver Only) |
| | Passenger Air Bag |
| | Anti-lock Brakes (4) |
| | 4-wheel Disc Brakes |
| | Front Side Impact Air Bags |
| | Head/Curtain Air Bags |
| | Backup Camera W/ Parking Sensors |
| | Hands Free |
| | Alarm |

To the left is the equipment of the loss vehicle that USAA CASUALTY INSURANCE COMPANY provided to CCC.

**Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

**Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca2fe84fc

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

|                          |                        |   |
|--------------------------|------------------------|---|
|                          | Traction Control       |   |
|                          | Stability Control      |   |
| **Exterior/Paint/Glass** | Dual Mirrors           |   |
|                          | Privacy Glass          |   |
|                          | Fog Lamps              | 📋 |
|                          | Clearcoat Paint        |   |
| **Other - Trucks**       | Rear Step Bumper       |   |
|                          | Rear Sliding Window    |   |
|                          | Running Boards/Side Steps | 📋 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca2fe84fc

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| Mechanical | VERY GOOD | No seepage | $ 132 |
| Tires | VERY GOOD | 10/32 | $ 44 |
| Paint | VERY GOOD | Few scratches prior repairs | $ 132 |
| Body | VERY GOOD | VFew dings prior repairs | $ 374 |
| Glass | VERY GOOD | Few chips | $ 44 |
| Interior | VERY GOOD | Light wear on driver side | $ 264 |

USAA CASUALTY INSURANCE COMPANY uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Good condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca2fe84fc

 **CCC ONE   MARKET VALUATION REPORT** | Owner: Almon, Diaki
Claim: 014972527000000022001

# COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Odometer | 8,368 | 8,368 | 8,368 |
| Automatic Transmission | | | |
| Power Steering | | | |
| Power Brakes | | | |
| Power Windows | | | |
| Power Locks | | | |
| Air Conditioning | | | |
| Tilt Wheel | | | |
| Cruise Control | | | |
| Rear Defogger | | | |
| Intermittent Wipers | | | |
| Keyless Entry | | | |
| Telescopic Wheel | | | |
| Cloth Seats | | | |
| AM Radio | | | |
| FM Radio | | | |
| Stereo | | | |
| Search/Seek | | | |
| CD Player | | | |
| Steering Wheel Touch Controls | | | |
| Auxiliary Audio Connection | | | |
| Styled Steel Wheels | x | | |
| 20" Or Larger Wheels | | x | x |
| Drivers Side Air Bag | | | |
| Passenger Air Bag | | | |
| Anti-lock Brakes (4) | | | |
| 4-wheel Disc Brakes | | | |
| Front Side Impact Air Bags | | | |
| Head/Curtain Air Bags | | | |
| Backup Camera W/ Parking Sensors | | | |
| Hands Free | | | |
| Alarm | | | |
| Traction Control | | | |
| Stability Control | | | |
| Dual Mirrors | | | |
| Privacy Glass | | | |
| Fog Lamps | | x | x |
| Clearcoat Paint | | | |
| Rear Step Bumper | | | |

**Comp 1**
**2018 Nissan Titan Sv Crew Cab 8 5.6l**
**Gasoline Gasoline Direct Injection**
**Dealership** Gunther Pre Owned
**Telephone** (954) 388-9191
**Source** Dealer Quotation
**Stock #** NA
**Obtained Date:** 03/07/2019
**Distance from Opa Locka, FL**
14 Miles - Fort Lauderdale, FL

**Comp 2**
**2018 Nissan Titan Sv Crew Cab 8 5.6l**
**Gasoline Gasoline Direct Injection**
**Dealership** B H Cars
**Contact** Owner, Nelson
**Telephone** (954) 917-4145
**Source** Dealer Quotation
**Stock #** NA
**Obtained Date:** 03/07/2019
**Distance from Opa Locka, FL**
21 Miles - North Lauderdale, FL

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Dealer Quotation** is a survey of a dealer used to determine the market value impact of the branded title.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

†The **Condition Adjustment** sets that comparable vehicle to Good condition, which the loss vehicle is also compared to in the Vehicle Condition section.

USAA Confidential

0901119ca2fe84fc

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

## COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Rear Sliding Window | | | |
| Running Boards/Side Steps | | x | x |
| **Recently Quoted** | | $ 23,944 | $ 20,444 |
| **Adjustments:** | | | |
| Options | | + $ 625 | + $ 625 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca2fe84fc

 **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

## VALUATION NOTES

03/12/2019 13:06 - Post Valuation Adjustment entered for:

03/12/2019 13:06 - Options added :[20" Or Larger Wheels,Running Boards/Side Steps,Fog Lamps]

03/12/2019 13:06 - ADJR Z03 CONFIGURATION CHANGE

03/12/2019 13:06 - Options removed :[Styled Steel Wheels]

03/12/2019 13:06 - PVADJ CHANGE REQUESTED BY: PARSONS,KATHY(Q1150)

03/11/2019 09:56 - Condition Ratings changed after Valuation

03/11/2019 09:56 - Condition Comments changed after Valuation

03/11/2019 09:56 - PVADJ CHANGE REQUESTED BY: UNK,UNK(178386)

This Market Valuation Report has been prepared exclusively for use by USAA CASUALTY INSURANCE COMPANY, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Statutes concerning vehicle value include Florida Statute XXXVII - 626.9743.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

USAA Confidential

0901119ca2fe84fc

**CCC ONE** **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# SUPPLEMENTAL INFORMATION

### SALVAGE TITLE THRESHOLD

Salvage title threshold amount:                    $ 24,000.00

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

 **CCC ONE** **MARKET VALUATION REPORT** | Owner: Almon, Diaki
Claim: 014972527000000022001

## SUPPLEMENTAL INFORMATION

**EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

CCC provides USAA CASUALTY INSURANCE COMPANY information reported by Experian regarding the **2018 Nissan Titan (1N6AA1E68JN520002)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**

　No Event Found
⬍　Event Found
▭　Information Needed

### TITLE CHECK

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | | No Abandoned Record Found |
| Damaged | | No Damaged Record Found |
| Fire Damage | | No Fire Damage Record Found |
| Grey Market | | No Grey Market Record Found |
| Hail Damage | | No Hail Damage Record Found |
| Insurance Loss | ⬍ | Insurance Loss Record Found |
| Junk | | No Junk Record Found |
| Rebuilt | ⬍ | Rebuilt Record Found |
| Salvage | ⬍ | Salvage Record Found |

**TITLE CHECK**
EVENT FOUND

AutoCheck's database for this loss vehicle found historical events that might indicate a significant automotive problem. These problems can indicate past automotive damage or warnings associated with the vehicle title.

### EVENT CHECK

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | | No Frame Damage Record Found |
| Major Damage Incident | ⬍ | Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | | No Odometer Problem Record Found |
| Recycled | | No Recycled Record Found |
| Water Damage | | No Water Damage Record Found |
| Salvage Auction | | No Salvage Auction Record Found |

**EVENT CHECK**
EVENT FOUND

AutoCheck's database for this loss vehicle found historical events that might indicate a significant automotive problem. These problems can indicate past automotive damage or warnings associated with the vehicle title."

### VEHICLE INFORMATION

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | No Accident Record Found |
| Corrected Title | No Corrected Title Record Found |
| Driver Education | No Driver Education Record Found |
| Fire Damage Incident | No Fire Damage Incident Record Found |
| Lease | No Lease Record Found |
| Lien | No Lien Record Found |
| Livery Use | No Livery Use Record Found |
| Government Use | No Government Use Record Found |
| Police Use | No Police Use Record Found |
| Fleet | No Fleet Record Found |
| Rental | No Rental Record Found |
| Fleet and/or Rental | No Fleet and/or Rental Record Found |
| Repossessed | No Repossessed Record Found |
| Taxi use | No Taxi use Record Found |
| Theft | No Theft Record Found |
| Fleet and/or Lease | No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | No Emissions Safety Inspection Record Found |
| Duplicate Title | No Duplicate Title Record Found |

**VEHICLE INFORMATION**

AutoCheck's result for this loss vehicle show no vehicle information that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**ODOMETER CHECK**

AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

 CCC ONE  **MARKET VALUATION REPORT** | Owner: Almon, Diaki
Claim: 014972527000000022001

# SUPPLEMENTAL INFORMATION

## FULL HISTORY REPORT RUN DATE: 03/12/2019

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 01/30/2018 | AL | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 03/19/2018 | AL | | Auto Insurance Source | VEHICLE REPORTED AS TOTAL LOSS |
| 03/19/2018 | | | Auto Insurance Source | VEHICLE HAD COMPREHENSIVE DAMAGE |
| 04/27/2018 | SAINT LOUIS, MO | 10 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 04/27/2018 | SAINT LOUIS, MO | | Motor Vehicle Dept. | SALVAGE |
| 07/12/2018 | FL | 25 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 07/14/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/14/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 07/14/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | SALVAGE |
| 08/06/2018 | OPA LOCKA, FL | 351 | Motor Vehicle Dept. | TITLE |
| 08/06/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 08/06/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | SALVAGE |
| 08/07/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 08/07/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | REBUILT/REBUILDABLE |
| 08/07/2018 | OPA LOCKA, FL | | Motor Vehicle Dept. | SALVAGE |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

CCC≋ONE  **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

## SUPPLEMENTAL INFORMATION

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

0901119ca2fe84fc

USAA Confidential

 **CCC**◯**ONE**   **MARKET VALUATION REPORT**

Owner: Almon, Diaki
Claim: 014972527000000022001

# SUPPLEMENTAL INFORMATION

## NHTSA VEHICLE RECALL

The National Highway Traffic Safety Administration has issued 1 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 18V240000

**Mfg's Report Date :** APR 15, 2018

**Component :** EQUIPMENT:OTHER:LABELS

**Potential Number Of Units Affected :** 483

**Summary :** Nissan North America, Inc. (Nissan) is recalling certain 2016-2018 Nissan Titan, 2016 and 2018 Nissan Titan XD vehicles. Accessories installed on these vehicles reduced the load carrying capacity, however, a Load Carrying Capacity modification label was not installed, possibly allowing the vehicle to be overloaded. As such, these vehicles fail to comply with the requirements of Federal Motor Vehicle Safety Standard (FMVSS) number 110, "Tire Selection and Rims."

**Consequence :** An overloaded vehicle can increase the risk of a crash.

**Remedy :** Nissan will notify owners and provide a new modification label, with installation instructions, free of charge. The recall began on June 4, 2018. Owners may contact Nissan customer service at 1-800-867-7669.

**Dates Of Manufacture :** APR 13, 2016 to FEB 26, 2018

USAA Confidential

0901119ca2fe84fc